Dustin C. Hamilton, ABA #1405024
Nathan J. Beard, ABA #1905047
Le Gros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, WA 98106
Phone: (206) 623-4990
Facsimile: (206) 467-4828
Email: dhamilton@legros.com

Attorneys for Defendant Vitus Energy, LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| CHRISTINA GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>VITUS ENERGY, LLC,<br><br>Defendant. | Case No.: 3:20-cv-00249-JMK<br><br>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PARTIAL JUDGMENT ON THE PLEADINGS |

Defendant Vitus Energy, LLC ("Vitus") moves for summary judgment in its favor on all of Plaintiff's claims asserted against it[1] for the reasons that Plaintiff's claims are not supported by the evidence. Vitus also moves for judgment on the pleadings on Plaintiff's negligent hiring, training, and supervision claim and punitive damages claim because Plaintiff failed to state a claim upon which relief can be granted.

---

[1] The only claim Vitus does not move to dismiss is Plaintiff's negligence claim against non-party Kevin Dewitt.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 1
No. 3:20-cv-00249-JMK
{29551.00275261;6}

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

# I. FACTS

Defendant Vitus Energy, LLC, is the owner and operator of the JACKIE M. The JACKIE M is a 61-foot, 14 gross ton tugboat and is a United States Coast Guard documented vessel. Dkt. # 22, p. 1. Tugboats working in the bays and rivers in Alaska, like the JACKIE M, use skiffs as necessary to take depth soundings and guide the tug. At the time of Plaintiff's injury, the Vitus skiff used to support the JACKIE M was an 18-foot aluminum boat equipped with a 75 horsepower outboard engine. *Id.* At the times relevant to this dispute, the JACKIE M's captain was non-party Kevin Dewitt. Dkt. # 1, p. 2.

Plaintiff Christina Garcia testified she first met Dewitt one evening[2] in October 2018 when she and a coworker introduced themselves to Dewitt and two other JACKIE M crewmembers at an inn in Dillingham. Ex. A to Declaration of Nathan J. Beard ("Garcia Dep.") at 67:19-25; 68:1-24; 79:16-22. That evening, Plaintiff testified they "drank a lot," took shots, danced, and spent the night together. *Id.* at 69:25; 70:1-25; 71:1-25; 72:1-25; 73:1-3. After meeting that evening, Plaintiff testified she and Dewitt stayed in contact through text and made plans to meet up again the following Friday. *Id.* at 78:14-18.

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

---

[2] There is conflicting evidence on the night Plaintiff and Dewitt met in relation to the grounding on Friday, October 19, 2018. Garcia testified she first met Dewitt the Friday prior to the grounding. Garcia Dep. at 68:21-25; 69:1-9; 78:14-20. Dewitt testified he met Garcia somewhere around the 18th or 17th of October. Dewitt Dep. at 43:8-13.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 2
No. 3:20-cv-00249-JMK
{29551.00275264/6}

On Friday, October 19, 2018, Plaintiff and Dewitt texted one another or had a phone call and agreed to meet up later at the inn in Dillingham. *Id.* at 80:3-10. On that day, the JACKIE M was anchored four to five miles outside of Dillingham and accessible using the skiff in question. *See, e.g.,* Ex. B to Beard Decl. ("Dewitt Dep.") at 17:2-6; 82:16-20. Dewitt testified he "continued working and sometime throughout the evening after things were done [he] went to meet her." *Id.* at 53:19-25; 54:1-6.

Vitus has written policy for Skiff Use and Operations. The policy provides "The vessel skiff should be used for Vitus Marine business only – NOT FOR PERSONAL USE." Ex. G to Beard Decl. (emphasis in original). Dewitt acknowledged that when he took the JACKIE M's skiff into Dillingham that night to meet Plaintiff, he did so alone, for "personal reasons" rather than for any work purpose. *Id.* at 69:4-10. He also testified his use of the skiff was against Vitus' policy. 71:12-16.

When Dewitt arrived at the inn, Plaintiff testified Dewitt "looked clean" and "fresh." Garcia Dep at 94:20-24. He did not appear intoxicated. *Id.* Plaintiff testified:

> I was excited to see him. And he showed up and -- and then I bought him a beer, and -- and then he's going like this, patting himself on his body like that (indicating). And I was, like, what's up? And he looks at me. He was, like, I forgot my money. I said, what do you mean? He's, like -- and he pulls out his pockets. And he's, like, my money is in the other jeans, in my other jeans. And I was, like, well, you know, that's all right. Just -- you know, let's drink on this 40 that I have and then just call it a night.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 3
No. 3:20-cv-00249-JMK
129551.0027526v1.6)

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 3 of 26

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

And he's, like -- he's, like -- he -- and he tells me -- he's, like, do you want to come with me to go get my money. And I said, yeah.

Garcia Dep. at 80:10-22. Consistent with Plaintiff's testimony, Dewitt also testified he had one beer with Plaintiff before the two decided to return to the JACKIE M for Dewitt's wallet:

> A      I met her at the bar like she asked me to do.
>
> **Q      Okay. What did you do there?**
>
> A      She bought me a beer.
>
> **Q      And then what?**
>
> A      Then I left. I didn't have my wallet. So I told her, I said I don't have my wallet or anything and so told her I had to go back to the boat.
>
> **Q      Okay. And then what happened?**
>
> A      Conversation however it was spearheaded, I was going to go back, get in the skiff, go to the boat. Whether she asked to go or I asked her to go I don't know, but she was riding out to the tug with me.

Dewitt Dep. at 54:4-17.

Dewitt and Garcia boarded the skiff, journeyed to the JACKIE M at anchor, retrieved Dewitt's wallet from the tug, talked to the crew, and boarded the skiff to head back to Dillingham. Garcia Dep. at 80:20-25; 81:1-15; Dewitt Dep. at 54:13-25; 55:1-2. Dewitt acknowledged that, like using the skiff for personal reasons, taking Ms. Garcia in the skiff also was against Vitus' policy:

> **Q.      So you were in the skiff and contrary to Vitus policy. Was having a passenger in the skiff protocol?**
>
> A.      No.

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990 FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 4
No. 3:20-cv-00249-JMK
129551.0027526|61)

**Q.     And both of these you did in the dark in the skiff so you – you – you were in the skiff and had a passenger --- you were in the skiff, you shouldn't have been for personal reasons, you had a passenger in the skiff, it was dark.**

A.     Uh-huh (affirmative).

Dewitt Dep. at 80:2-11.

While en route to Dillingham in the dark and with the lights of Dillingham in the background, Dewitt misjudged his location and grounded the skiff "on a grassy island sticking out" which caused both Garcia and Dewitt to surge forward. Dewitt Dep. at 55:3-8; 58:6-9. Both suffered lacerations to their heads. Dewitt radioed the JACKIE M for assistance. The JACKIE M responded, pulled the skiff off the beach, took Plaintiff and Dewitt to the dock, "handed them to the police and ambulance," and left. *Id.* at 73:3-25; 74:1-18; 87:17-23; Ex. D to Beard Decl. ("Edwards Dep.") at 46:9-12; 48:4-12.

**There is no evidence Dewitt was impaired by alcohol the night of the grounding.** As described further below, none of the people who interacted with Dewitt on the night of the grounding, including Plaintiff Christina Garcia herself, believed Dewitt was impaired by alcohol when he grounded the skiff. Garcia Dep. at 94:25; 95:1-3, 13-23; Ex. E to Beard Decl. ("Russo Dep.") at 39:1-16. Edwards Dep. at 34:10-25; 35:1-25; 36:1-17; Dewitt Dep. at 85:10-12; 87:22-25; 88:1-23. The police interviewed Dewitt after the incident and did not arrest Dewitt. *Id.*

Likewise Vitus, in its post-incident investigation, did not find alcohol was a factor in the grounding of the skiff. In the days following the grounding, Vitus

Le Gros Buchanan & Paul

4025 DELRIDGE WAY SW., SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 5
No. 3:20-cv-00249-JMK
{29551.00275264.6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 5 of 26

Chief Strategic Officer and owner Mark Smith met the JACKIE M crew and relieved Dewitt of his duties while he investigated the incident. Dewitt Dep. at 90:25; 91:1-12. During his investigation, alcohol was not found as a cause of the incident. Ex. C to Beard Decl. ("Smith Dep.") at 46:16-21. Likewise, Vitus' Director of Marine Operations, Luther Bartholomew, testified he had "no reason" to suspect alcohol was a factor in Dewitt's grounding of the skiff. Ex. F to Beard Decl. ("Bartholomew Dep.") at 102:13-25; 103:1-25; 104:1-16. Following the investigation, Dewitt was terminated by Vitus for "operating the skiff for personal use, bringing an unauthorized person on-board the vessel and putting an unauthorized person in the skiff." Bartholomew Dep. at 74:16-22. Dewitt acknowledges his use of the skiff for personal reasons and permitting a passenger to board the skiff was against Vitus' company policies. *See, e.g.,* Dewitt Dep. at 80:2-11; 91:16-21.

## II. ISSUES

1.  Whether Vitus is entitled to summary judgment in its favor on Plaintiff's negligence *per se* claim due to a lack of evidence supporting that claim? *Yes*.

2.  Whether Vitus is entitled to summary judgment in its favor on Plaintiff's negligent entrustment claim due to a lack of evidence supporting that claim? *Yes*.

3.  Whether Plaintiff failed to state a claim for negligent hiring, training, and supervision? *Yes*.

4.  Whether Vitus is entitled to summary judgment in its favor on Plaintiff's negligent hiring, training, and supervision claim due to a lack of evidence supporting that claim? *Yes*.

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990 FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 6
No. 3:20-cv-00249-JMK
129551.0027752614.6)

Case 3:20-cv-00249-JMK    Document 46    Filed 02/01/22    Page 6 of 26

5. Whether Vitus is entitled to summary judgment in its favor on Plaintiff's vicarious liability claim because Capt. Dewitt's actions were outside the scope of his employment? *Yes*.

6. Whether Plaintiff failed to state a claim for punitive damages? *Yes*.

7. Whether Vitus is entitled to summary judgment in its favor on Plaintiff's punitive damages claim due to a lack of evidence supporting that claim? *Yes*.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under Rule 56, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id*.  The non-moving party must respond by setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  Courts view the facts in the light most favorable to the non-moving party and draw reasonable inferences therefrom.  *Matsushita Elec. Indus. Co. v.*

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990    FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 7
No. 3:20-cv-00249-JMK
{29551.002752041.6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 7 of 26

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). While a court will not grant summary judgment if the evidence is sufficient to permit a reasonable jury to find for the non-moving party, summary judgment may be granted if the non-moving party's evidence is "merely colorable" or is "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When no genuine issues of material fact exist, the moving party is entitled to summary judgment as a matter of law. *Id.*

### B. Maritime Law Applies

Plaintiff's claims are governed by the general maritime law. "[A] party seeking to invoke federal admiralty jurisdiction…over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995). Plaintiff's claim satisfies the "location" test; there is no dispute the skiff incident occurred over navigable waters just outside of Dillingham, Alaska. See, Dkt. # 1, p. 2. The fact that the skiff grounded on land after transiting through navigable waters does not remove the case from this Court's admiralty jurisdiction. 46 U.S.C. § 30101(a) (admiralty jurisdiction "extends to and includes all cases of damage or injury, to person or property, caused by a vessel on navigable water, even though the injury or damage is done or consummated on land."). Plaintiff's claim also satisfies the "connection with maritime activity" test. Plaintiff alleges Dewitt negligently operated the skiff

{29551.00275264:6}

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

through navigable waterways. Dkt. # 1, p. 4. When the wrong alleged "involves the negligent operation of a vessel on navigable waters…it has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S. Ct. 2654, 73 L. Ed. 2d 300 (1982). Though Plaintiff filed suit under diversity jurisdiction, maritime law applies to cases sounding in admiralty even when the plaintiff files under diversity jurisdiction. *Dominique v. Holland America Line, N.V.*, No. C12-78RSL, 2013 U.S. Dist. LEXIS 139888, *3 (W.D. Wash. Sep. 27, 2013) (*citing Gibbs v. Carnival Cruise Lines¸* 314 F.3d 125, 131 (3d Cir. 2002)).

**C.    Because there is no evidence Dewitt operated the skiff while under the influence of an alcoholic beverage in violation of AS 28.35.030, Defendant is entitled to summary judgment in its favor on Plaintiff's Count I: Negligence Per Se.**

In her complaint, Plaintiff alleges "Defendant's employee, Kevin Dewitt, was *negligent per se*, when he operated Defendant's skiff while under the influence of an alcoholic beverage, in violation of AS 28.35.030. Dkt. # 1, p. 3. Alaska Statute 28.35.030 provides, in relevant part:

> (a) A person commits the crime of driving while under the influence of an alcoholic beverage… if the person operates…a watercraft
>
> > (1) while under the influence of an alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination; or
> >
> > (2) and if, as determined by a chemical test taken within four hours after the alleged operating or driving, there is 0.08 percent or more by weight of alcohol in the person's blood or 80 milligrams or more of alcohol per 100 milliliters of blood, or if there is 0.08 grams or more of alcohol per 210 liters of the person's breath.

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

To establish negligence *per* se, Plaintiff has to prove, *inter alia¸* a violation of the relevant statute.[3] In this case, Plaintiff cannot establish Dewitt violated AS 28.35.030 because there is no admissible evidence Dewitt (1) was under the influence of an alcoholic beverage; or (2) had a blood or breath alcohol content above the statutory limit when he grounded the skiff. On the contrary, the evidence establishes Dewitt was not intoxicated and that alcohol was not a factor in the grounding.

       1.   There is no evidence Dewitt was "under the influence" of an alcoholic beverage in violation of AS 28.35.030(a)(1) when he grounded the skiff.

There is no admissible[4] evidence Dewitt was "under the influence" of alcohol when he grounded the skiff. For a person to be "under the influence" of alcohol for purposes of AS 28.35.030(a)(1), there must be "proof of a level of impairment that renders the driver incapable of operating a motor vehicle 'with the caution characteristic of a person of ordinary prudence who is not under the influence.'" *Molina v. State¸* 186 P.3d 28, 29 (Alaska App. 2008) (*quoting Gundersen v. Anchorage*, 762 P.2d 104, 114-15 n. 7 (Alaska App. 1988). In this

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

---

[3] The five elements of negligence per se in admiralty cases are: (1) violation of a statute or regulation, (2) the plaintiff is a member of the class intended to benefit from the statute, (3) the plaintiff suffered an injury the statute was designed to protect against, (4) the violation was unexcused, and (5) causation. *Saunders v. Consumers Energy Co.*, No. 1:19-cv-782, 2021 U.S. Dist. LEXIS 225152, *24 (W.D. Mich. Nov. 15, 2021).

[4] Plaintiff's maritime liability expert's speculation on the role of alcohol in this suit is not admissible and a motion to exclude his opinions has been filed. *See* Dkt. # 39.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 10
No. 3:20-cv-00249-JMK
{29551-00725264;6}

case, there is no evidence Dewitt was "impaired" by alcohol while he operated the skiff to any degree.

None of the people who interacted with Dewitt on the night of the grounding, including Plaintiff Christina Garcia herself, believed Dewitt was impaired by alcohol when he grounded the skiff. Garcia testified she would not have boarded the skiff if Dewitt seemed intoxicated and that Dewitt did not seem intoxicated when the two boarded the skiff and headed back for Dillingham. Garcia Dep. at 94:25; 95:1-3, 13-23. Crewmember Jonathan Russo testified he did not smell alcohol that he has "no reason to believe [Dewitt] was drinking." Ex. E to Beard Decl. ("Russo Dep.") at 39:1-16. Crewmember Scott Edwards likewise did not testify he believed Dewitt to be intoxicated. Though Plaintiff attempts to insinuate Dewitt was under the influence of alcohol because Edwards described Dewitt and Garcia as in "party mode" when they boarded the JACKIE M to retrieve Dewitt's wallet, Edwards testified he meant "[t]hey were just happy and running around the boat" while others were trying to sleep. *See*, Edwards Dep. at 34:10-25; 35:1-25; 36:1-17. Edwards specifically testified that by saying "party" he did not mean "consuming alcohol." *Id.* Dewitt testified alcohol was "not a factor in this accident." Dewitt Dep. at 85:10-12. Dewitt was interviewed by police on the dock after the incident. *Id.* at 87:22-25; 88:1-23. Dewitt testified the police did not arrest him or find alcohol was a contributing factor to the incident. *Id.* The uncontroverted evidence shows Dewitt drank only one beer, the same beer

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 11
No. 3:20-cv-00249-JMK
{29551-00725264:6}

Ms. Garcia bought him, well before the grounding. Dewitt Dep. at 85:13-16; 88:1-9. There is no evidence Dewitt was "impaired" by alcohol when he operated the skiff.

       2.    <u>There is no evidence Dewitt's blood or breath alcohol content was over the legal limit in violation of AS 28.35.030(a)(2).</u>

There is no evidence Dewitt received a chemical test within four hours of operating the skiff as required for a violation of AS 28.35.030(a)(2). Likewise, there is no evidence Dewitt operated and grounded the skiff with 0.08 percent or more by weight of alcohol in his blood, 80 milligrams or more of alcohol per 100 milliliters of blood, or 0.08 grams or more of alcohol per 210 liters of his breath as required for a violation of AS 28.35.030(a)(2). Accordingly, Plaintiff cannot prove Dewitt violated AS 28.25.030(a)(2) as a matter of law.

Because Plaintiff cannot establish Dewitt violated AS 28.35.030, Plaintiff cannot establish her negligence *per se* claim. Vitus, accordingly, is entitled to judgment in its favor on this negligence *per se* claim as a matter of law.

    **D.**    **Because it is undisputed that Dewitt's use of the skiff was unauthorized and that he knew his use of the skiff was unauthorized, Plaintiff' Count III: Negligent Entrustment cause of action fails as a matter of law.**

The doctrine of negligent entrust as applied in suits in admiralty is embodied in Restatement (Second) of Torts § 390. *Churchill v. F/V Fjord*, 892 F.2d 763, 771 (9th Cir. 1988). Section 390 provides:

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 12
No. 3:20-cv-00249-JMK
{29551-00725261-6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 12 of 26

> One who supplies … a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Plaintiff alleges Vitus negligently entrusted Capt. Dewitt with the skiff "when it permitted Mr. Dewitt use of the skiff when it knew or should have known that Mr. Dewitt intended or was likely to use the skiff in a manner that created an unreasonable risk of harm to others."

To the contrary, there is no evidence Vitus knew or had reason to know Capt. Dewitt would take the skiff on a personal endeavor at night against company policy, pick up and travel with an unauthorized passenger (Plaintiff) against company policy, and operate the skiff in an unsafe manner. Capt. Dewitt is a United States Coast Guard licensed vessel operator and holds a Master Merchant Mariner Credential. Dewitt Dep. at 28:13-14; Ex. H to Beard Decl., at VITUS 0189-90. On Dewitt's resume submitted to Vitus, Dewitt noted extensive experience in Alaskan waters and that he started working as a Captain in 1995. Ex. H to Beard Decl. at VITUS0115-117. Throughout his 15-20 years of working in the industry, he has been trained how to use a sounding skiff. Dewitt Dep. at 24:4-17. Vitus' Director of Marine Operations, Luther Bartholomew, testified Dewitt was experienced, well qualified, and a "top tier" candidate for his job at Vitus:

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 13
No. 3:20-cv-00249-JMK
[29551-0075264.6]

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 13 of 26

For Kevin's license and for -- for the Jackie's theater in operating in which is rivers, lakes, bays and sounds, Kevin met the requirements with regards to the licensing that we had for the Jackie's intended route as well with Kevin's past experience on western Alaskan rivers and his demonstration of those skill sets, Kevin was a -- in my assessment of Kevin's ability, Kevin would have been in the top tier captains or operators on western rivers based on his experience, based on his knowledge, based on his license and based on his endorsements that he currently had. Not only that, but when I met Kevin on-board the vessel, walking through the boat, he knew his boat in and out, he knew the things that were required of a captain and -- and then as well when we got underway was able to quickly see that Kevin knew how to operate a tug and barge in the push configuration and/or in the towing configuration.

Bartholomew Dep. at 64:24-25; 65:1-21.

Vitus has a written policy that the vessel skiff "should be used for Vitus Marine business only – NOT FOR PERSONAL USE."  Ex. G to Beard Decl. at VITUS0201.  It also was against Vitus policy for Dewitt to have a passenger (*i.e.*, Plaintiff) in the skiff.  Dewitt Dep. at 80:2-11.  Dewitt knew using the skiff for personal use and bringing a passenger aboard the skiff was against Vitus policy. *Id.*; *see also* Dewitt Dep. at 71:12-16.  Dewitt testified his actions were a "bad judgment call" and not the kind of decision he normally makes:

> **Q      Okay.  So when you think back on it what were the mistakes you made that night?**
>
> A      Leaving the -- leaving the tug and having a passenger.
>
> **Q      Okay.  In terms of when you headed back to the tug with a passenger.....**
>
>  A      Uh-huh.  (Affirmative)
>
> **Q      .....you know, you're a seasoned pilot.....**
>
> A      Uh-huh.  (Affirmative)

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 14
No. 3:20-cv-00249-JMK
{29551-00725264-6}

**Q** .....is that normally the kind of decision-making you make?

MR. HAMILTON: Objection to form.

**A** No, that was a bad judgment call.

Dewitt Dep. at 81:7-25. In the week following the incident, Capt. Dewitt wrote an email to Vitus' officers acknowledging his decision was "irresponsible behavior" and a "bad decision" for which there was "no excuse."[5] Ex. I to Beard Decl. at VITUS0124. Vitus nevertheless terminated Dewitt for "operating the skiff for personal use, bringing an unauthorized person on-board the vessel and putting an unauthorized person in the skiff." Bartholomew Dep. at 74:16-22.

The Ninth Circuit has upheld summary judgment in favor of a vessel owner on a negligent entrustment claim for a similar unauthorized skiff use. In *Churchill v. F/V Fjord*, a crewmember[6] of the fishing vessel F/V FJORD used the vessel's skiff to attend a beach party without the vessel owner's permission and collided with another skiff, killing one of skiff's occupants and injuring another. 892 F.2d 763, at 766 (9th Cir. 1988). The owner previously observed the crewmember

---

[5] Dewitt specifically wrote:

I am sending this Email in regard to my irresponsible behavior and bad decision that I made in Dillingham last trip. There really is no excuse but there have been issues going on at home that that through me into a horrible place. I would like to say I am sorry for putting the company at risk. I have betrayed your trust and I know it may not hold water but I give you my word there will be no more issues in the future. I would like to help Vitus finish the season. I feel that I would be of help to my fellow employees and don't want to cause them more strain. Please consider the job that I did this summer. I put in a lot of hard work and want to continue that. Thanks Kevin

[6] The crewmember was also the F/V FJORD's owner's son.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 15
No. 3:20-cv-00249-JMK
{29551-0075364v6}

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

operating the skiff and believed the crewmember was a "competent operator." Before the collision, the crewmember had not used the skiff without the owner's permission. *Id.* at 771. The owner did not know or have reason to know the crewmember would operate the skiff "in a harmful manner," and the crewmember had not given the owner reasons to believe he would disobey instructions not to use the skiff. Under these facts, the Ninth Circuit found the district court did not err in granting summary judgment in favor of the vessel owner on Plaintiff's negligent entrustment claim. *Id.*

In the case at bar, there is no evidence Vitus knew or had reason to know Dewitt to be likely to use the skiff in a manner involving unreasonable risk of physical harm to others as required for Plaintiff to establish a *prima facie* negligent entrustment claim. On the contrary, the evidence shows Capt. Dewitt was a licensed mariner with over 20 years of experience and was trained how to use skiffs. Dewitt knew Vitus' policy prohibited bringing passengers aboard the skiff and prohibited using the skiff for personal reasons, but did so anyway in an episode of "bad judgment." There is no evidence demonstrating Vitus knew or should have known Dewitt would break company policy and use the skiff in an unsafe manner with an unauthorized passenger and for unauthorized personal use. Moreover, Vitus has demonstrated that it takes its policies' seriously and terminates employees that do not meet its standard. *See, e.g.,* Russo Dep at 31:8-25; 32:1-6 (Russo fired for not winterizing pipes properly); Bartholomew Dep. at

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 16
No. 3:20-cv-00249-JMK
{29551-0075564 6}

74:16-22 (Dewitt fired for "operating the skiff for personal use, bringing an unauthorized person on-board the vessel and putting an unauthorized person in the skiff."). Accordingly, Vitus is entitled to summary judgment in its favor on Plaintiff's negligent entrustment claim.

### C. Because there is no evidence Vitus negligently hired, trained, or supervised Capt. Dewitt, Vitus is entitled to judgment on the pleadings and/or summary judgment on Plaintiff's Count IV: Negligent Hiring, Training, and Supervision cause of action.

Plaintiff has failed to adduce any admissible evidence or allege any facts to support a negligent hiring, training, or supervision claim. Under the general maritime law, negligent supervision "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Diaz v. Carnival Corp.*, No. 20-22755-Civ-TORRES, 2021 U.S. Dist. LEXIS 169184, *15, 2021 AMC 389 (S.D Fla. Aug. 20, 2021). Negligent training occurs when an employer "was negligent in the implementation or operation of the training program" and the negligence causes a plaintiff's injury." *Id.* To state a claim for negligent hiring under the maritime law, a plaintiff must prove: "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-cv-23733-UU, 2016 U.S.

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

Dist. LEXIS 150817, *8-9 (S.D. Fla. 2016) (*citing Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016) (internal citations omitted). To satisfy the second element, a plaintiff must prove "the employer was put on notice of the harmful propensities of the [employee]" before either hiring or retaining the employee. *Id.; Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348 (S.D. Fla. 2016).

      1.    <u>Vitus is entitled to judgment on the pleadings on Plaintiff's negligent hiring, training, and supervision cause of action</u>.

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) is the functional equivalent of Rule 12(b)(6), and the same standard of review applies to motions brought under either rule. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011)) (*quoting Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A motion to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balisteri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). While material allegations are taken as admitted and the complaint is construed in the Plaintiff's favor (*Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983)), the complaint must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 18
No. 3:20-cv-00249-JMK
{29551-00725264-6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 18 of 26

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

1955, 167 L.Ed.2d 929 (2007). Specifically, a plaintiff is obligated to provide the grounds of his entitlement to relief, and cannot rely upon "labels and conclusions." *Id.*, *citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Nor does a complaint suffice if it 'tenders naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, at 557. A complaint that pleads facts "merely consistent with" a defendant's liability is insufficient to survive a motion to dismiss. *Id.*

Plaintiff's Complaint is devoid of any factual allegations supporting its negligent hiring, training, and supervision cause of action. Dkt. # 1. Plaintiff does not allege any facts demonstrating Vitus was aware or should have been aware of problems with Dewitt that indicated his unfitness. Plaintiff does not allege any facts demonstrating Vitus failed to take further actions against Dewitt such as investigating, discharge, or reassignment upon learning of problems. Plaintiff does not allege any facts establishing any deficiencies vis-à-vis implementation or operation of Vitus' training program that caused Plaintiff's injuries. Plaintiff does not allege any facts showing Vitus was put on notice of any purportedly harmful propensities of Dewitt before hiring Dewitt. Instead of supporting her causes of

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 19
No. 3:20-cv-00249-JMK
{29551-00755361-6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 19 of 26

action with factual allegations, Plaintiff merely alleged Vitus had a duty to act reasonably in hiring, training, and supervising its employees, Vitus breached its duty vis-à-vis Dewitt, and this breach caused Plaintiff damages. Dkt. # 1, p. 5. Such a threadbare recital of the elements of a cause of action is insufficient to state a claim upon which relief can be granted per *Iqbal* and *Twombly*. *See also Doe v. NCL (Bahamas) Ltd.*, 2016 U.S. Dist. LEXIS 150817, at *8-11 (dismissing plaintiff's negligent training, supervision, and hiring claims for failure to state a claim). These claims must be dismissed accordingly.

2. <u>Vitus is entitled to summary judgment on Plaintiff's negligent hiring, training, and supervision cause of action</u>

In addition to a lack of factual allegations in the Complaint supporting Plaintiff's negligent hiring, training, and supervision cause of action, there also is a lack of evidence in the record supporting these claims. With regard to the negligent hiring claim, there is no evidence Vitus was "on notice" that Dewitt would abscond with the skiff with a unauthorized guest or otherwise violate Vitus policy. On the contrary, the evidence shows Dewitt was experienced and a "top tier" candidate for his job at Vitus. With regard to the negligent training claim, the evidence shows Vitus had a policy to not use the skiff for personal reasons, that Dewitt knew this was policy, and that Dewitt violated the policy all the same. As such, Dewitt's decision to use the skiff for personal reasons was not caused by any lack of training. With regard to the negligent supervision claim, there is no evidence Vitus became aware or should have become aware that Dewitt would

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 20
No. 3:20-cv-00249-JMK
{29551-00725364.6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 20 of 26

ignore company policy and use the skiff for personal reasons with an unauthorized passenger; the evidence shows Dewitt's incident was a singular episode of "bad judgment." Because Plaintiff cannot present evidence to establish a *prima facie* negligent hiring, training, or supervision claim, Defendant is entitled to judgment in its favor as a matter of law on those claims.

> **D. Because Dewitt's use of the skiff was indisputably outside the scope of his employment, Vitus is entitled to summary judgment on Plaintiff's Count V: Vicarious Liability cause of action.**

The evidence demonstrates Dewitt was not within the scope of his employment when he used the skiff to pick up Ms. Garcia as a matter of law. In maritime cases, whether an employer is vicariously liable for the torts of an employee is governed by the Restatement (Second) of Agency § 228 and depends on whether the employee is within the scope of his employment. *In re Complaint of McLinn*, 744 F.2d 677, 683 (9th Cir. 1984); *Kadylak v. Royal Caribbean Cruise, LTD.*, 167 F.Supp.3d 1301 (S.D. Fla. 2016); *see also Ferguson v. Horizon Lines, Inc.*, No. CV11-3391, 2012 U.S. Dist. LEXIS 162976, *15, 2013 AMC 65 (N.D. Cal. 2012) (*citing Stoot v. D & D Catering Serv., Inc.*, 807 F.2d 1197, 1200 (5th Cir. 1987)). Under Section 228, conduct of a servant is within the scope of employment, if, but only if, (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 21
No. 3:20-cv-00249-JMK
{29551-00725364-6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 21 of 26

master.  In the case at bar, there is no evidence Dewitt was actuated, to any degree, by a purpose to serve Vitus when he took Ms. Garcia in the skiff against company policy.  On the contrary, the evidence shows Dewitt used the skiff when he was done working, after hours, for "personal reasons" during his "off time" and that he was not doing anything on behalf of Vitus "at that time of night."  Dewitt Dep. at 53:19-25; 54:1-4; 69:4-16; 110:23-25; 111:1-13.  Moreover, there is no dispute Dewitt's actions were against Vitus' policy forbidding use of the skiff for personal reasons and taking unauthorized passengers aboard the skiff.  Because there is no evidence Dewitt used the skiff on the night in question to serve Vitus to any degree, Vitus cannot be vicariously liable for Dewitt's actions.

> **E.** **Defendant is entitled to summary judgment and/or judgment on the pleadings in its favor on Plaintiff's Count VI: Punitive Damages.**

Plaintiff alleges an entitlement to punitive damages under Alaska law, AS 09.17.020.  Dkt. # 1, p. 7.

To the extent Plaintiff maintains it is entitled to an award of punitive damages against Vitus based upon Capt. Dewitt's conduct, there is insufficient evidence supporting such a claim.  Under the general maritime law, punitive damages can be awarded against a principal for an agent's torts, not only where they are authorized, ratified or approved and not only where the agent was unfit and the principal was reckless in employing him, but also where he was employed in a managerial capacity and was acting in the scope of employment. *In re Exxon*

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 22
No. 3:20-cv-00249-JMK
{29551-0075564-6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 22 of 26

*Valdez*, 270 F.3d 1215, 1235-36 (9th Cir. 2001). Alaska's law is substantially the same. AS 09.17.020(k).[7] The evidence does not support any of these bases for an award of punitive damages against Vitus for Capt. Dewitt's purported negligence. There is no evidence Vitus authorized, ratified, or approved Dewitt's use of the skiff on the night of the grounding; on the contrary, the evidence shows Vitus forbade all employees from using the skiff for personal reasons and bringing unauthorized passengers aboard the skiff and fired Dewitt for violating this policy. Likewise, as explained above, there is no evidence Dewitt was an unfit captain and that Vitus was "reckless" in employing him; on the contrary, the evidence shows Dewitt was experienced and a "top tier" candidate for his job. Finally, as explained in the section above, the uncontroverted evidence shows Dewitt's decision to use the skiff for his own personal reasons, with no business purpose, was done outside the scope of his employment with Vitus. Accordingly, Vitus cannot be subject to

---

[7] AS 09.17.020(k) provides:

> In a civil action in which an employer is determined to be vicariously liable for the act or omission of an employee, punitive damages may not be awarded against the employer under principles of vicarious liability unless (1) the employer or the employer's managerial agent (A) authorized the act or omission and the manner in which the act was performed or omission occurred; or (B) ratified or approved the act or omission after the act or omission occurred; or (2) the employee (A) was unfit to perform the act or avoid the omission and the employer or the employer's managerial agent acted recklessly in employing or retaining the employee; or (B) was employed in a managerial capacity and was acting within the scope of employment. In this subsection, "managerial agent" means a management level employee with the stature and authority to exercise control, discretion, and independent judgment over a certain area of the employer's business and with some power to set policy for the employer.

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 23
No. 3:20-cv-00249-JMK
{29551-00755264-6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 23 of 26

punitive damages for Dewitt's actions as a matter of law and is entitled to summary judgment in its favor on Plaintiff's punitive damages claim.

To the extent Plaintiff maintains Vitus' independent conduct provides the basis for a punitive damages claim, Vitus (1) is entitled to judgment on the pleadings pursuant to Rule 12(c) because Plaintiff failed to plead sufficient facts to establish such a claim; and (2) is entitled to summary judgment pursuant to Rule 56 because Plaintiff cannot present sufficient evidence to support such a claim. To support a claim for punitive damages under Alaska law, Plaintiff must show Vitus' conduct "was outrageous, including acts done with malice or bad motives" or "evidenced reckless indifference to the interest of another person." To support a claim for punitive damages under the general maritime law, Plaintiff must prove Vitus acted with "reckless or callous disregard" for the rights of others, or with "gross negligence or actual malice or criminal indifference." *Protectus Alpha Navigation Co. v. North Pacific Grain Growers*, Inc., 767 F.2d 1379, 1385 (9th Cir. 1985).

In support of her punitive damages claim, Plaintiff's complaint offers the conclusory recital that the "actions of Defendant were outrageous or evidenced reckless indifference to the interests of Plaintiff." Plaintiff otherwise failed to plead any facts that, if taken as true, demonstrate Vitus was outrageous, acted with malice or bad motives or reckless indifference or criminal indifference. Plaintiff's "[t]hreadbare recitals… supported by mere conclusory statements" and "naked

Le Gros Buchanan
& Paul
4025 DELRIDGE WAY SW., SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990    FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 24
No. 3:20-cv-00249-JMK
{29551-0072526465}

assertion[s]' devoid of 'further factual enhancement…" do not suffice under *Iqbal* 556 U.S. at 678 and *Twombly* 550 U.S. at 557. Accordingly, Plaintiff's claim for punitive damages must be dismissed for a failure to plead sufficient facts to state a claim for punitive damages. In addition to there being no factual allegations supporting Plaintiff's punitive damages claim, there also is no evidence supporting Plaintiff's claim for punitive damages. Vitus is, accordingly, entitled to summary judgment in its favor under *Celotex*, 477 U.S. at 322 and Rule 56.

## IV. CONCLUSION

For the foregoing reasons, Vitus is entitled to judgment in its favor as a matter of law.

DATED this 1st day of February, 2022.

LE GROS BUCHANAN & PAUL

By: *s/ Dustin C. Hamilton*
DUSTIN C. HAMILTON, ABA #1405024
*/s/ Nathan J. Beard*
NATHAN J. BEARD, ABA #1905047
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106
Telephone:       (206) 623-4990
Facsimile:        (206) 467-4828
Email:      dhamilton@legros.com
                  nbeard@legros.com

Attorneys for Defendant Vitus Energy,
LLC

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND PARTIAL JUDGMENT ON THE PLEADINGS – Page 25
No. 3:20-cv-00249-JMK
{29551-00725264;6}

Case 3:20-cv-00249-JMK   Document 46   Filed 02/01/22   Page 25 of 26

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to The Honorable Joshua M. Kindred, and serve it on all associated counsel.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington this 1st day of February, 2022.

*s/ Sheila Baskins*
Sheila Baskins, Legal Assistant
LeGros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, Washington 98106-1271
Telephone:    206-623-4990
E-mail:  sbaskins@legros.com

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990  FAX (206) 467-4828