IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CHRISTINA GARCIA,

                    Plaintiff,

        vs.

VITUS ENERGY, LLC,

                    Defendant.

Case No. 3:20-cv-00249-JMK

**ORDER DENYING PLAINTIFF'S
MOTION FOR SANCTIONS**

Before the Court is Plaintiff Christina Garcia's First Motion for Sanctions

("the Motion") at Docket 38.  Defendant Vitus Energy, LLC ("Vitus") filed an opposition

at Docket 41.  Plaintiff filed a reply at Docket 45.  For the foregoing reasons, Plaintiff's

Motion is **DENIED**.

## I.    BACKGROUND

Vitus is the owner and operator of the JACKIE M, a tugboat and a United

States Coast Guard documented vessel.[1]  The JACKIE M uses a skiff ("the skiff") to take

depth soundings and to guide the tug.[2]  In October 2018, Plaintiff met Kevin Dewitt at a

bar in Dillingham, Alaska.[3]  Mr. Dewitt was then serving as the captain of the JACKIE

---

[1] Docket 41 at 2.
[2] *Id.*
[3] Docket 38 at 3; Docket 41 at 2–3.

M.[4] Plaintiff and Mr. Dewitt remained at the bar until closing, consuming "a lot" of alcohol.[5] Approximately a week after this first meeting, Mr. Dewitt again met Plaintiff in Dillingham.[6] The evidence shows Plaintiff bought Mr. Dewitt one beer.[7] Mr. Dewitt then transported Plaintiff via the skiff to the JACKIE M.[8] On the return trip to Dillingham, Mr. Dewitt hit a sandbar and grounded the skiff, injuring himself and Plaintiff.[9] In the aftermath of the accident, Mr. Dewitt called the crew of JACKIE M for assistance.[10] The crew of the JACKIE M navigated to the site of the grounding and brought Mr. Dewitt and Plaintiff aboard.[11] Vitus employee Scott Edwards called Vitus's office and then called 911.[12] The JACKIE M crew then "drove [Plaintiff and Mr. Dewitt] to the city dock and handed them to the police and the ambulance."[13] Plaintiff was transported to the hospital to receive treatment for a laceration on her head, which required ten stitches.[14]

Plaintiff filed suit against Vitus in October 2020.[15] Among other claims, Plaintiff brings a claim for negligence per se, alleging that "Kevin Dewitt, was negligent per se, when he operated Defendant's skiff while under the influence of an alcoholic beverage, in violation of AS 28.35.030."[16] In the present motion, Plaintiff seeks sanctions

---

[4] Docket 38 at 2.
[5] Docket 38 at 3; Docket 38-7 at 19; Docket 41 at 3.
[6] Docket 38 at 3.
[7] *Id.*; Docket 41 at 4.
[8] *Id.* at 3.
[9] *Id.* at 4–5.
[10] Docket 38 at 4; Docket 38-4 at 13.
[11] Docket 38 at 4–5; Docket 38-4 at 11–12.
[12] Docket 38 at 5; Docket 38-4 at 3, 11.
[13] Docket 38-4 at 13.
[14] Docket 38 at 5.
[15] Docket 1 at 3–7.
[16] Docket 1 at 3.

for Vitus's spoliation of evidence.[17]  Specifically, Plaintiff claims that Vitus failed to test Mr. Dewitt for alcohol intoxication on the night of the accident in violation of Coast Guard regulations.[18]  Plaintiff claims this failure significantly hinders her ability to establish a *prima facie* case for negligence per se.[19]  Plaintiff acknowledges that "it is nearly impossible to prove an individual's level of intoxication without a chemical test."[20]

Pursuant to 46 C.F.R. § 4.06-1(b), when a marine employer determines that a marine casualty or incident

> is, or is likely to become, a serious marine incident, the marine employer shall take all practicable steps to have each individual engaged or employed on board the vessel who is directly involved in the incident chemically tested for evidence of drug and alcohol use as required in this part.[21]

46 C.F.R. § 4.03-2(a)(2) defines "serious marine incident" as "any marine casualty or accident" which is required to be reported to the Coast Guard and which results in "[a]n injury to a crewmember, passenger, or other person which requires professional medical treatment beyond first aid."  There is no indication that Mr. Dewitt was chemically tested for alcohol intoxication at any point on the night of October 19, 2018.[22]  Plaintiff asserts that the grounding of the skiff constituted a "serious marine incident," as Plaintiff's injuries

---

[17] Docket 38.

[18] *Id.* at 13–14.

[19] *Id.* at 15–16.

[20] *Id.* at 15.

[21] *See also* 46 C.F.R. § 4.06-3(a)(1) (requiring alcohol testing to be conducted on each individual within two hours of the serious marine incident or as soon as safety concerns are addressed.  Alcohol testing is not required to be conducted more than eight hours after a serious marine incident.).

[22] Docket 38 at 6.

required stitches.[23]  Therefore, Plaintiff contends that Vitus's failure to ensure Mr. Dewitt was tested for alcohol intoxication in violation of Coast Guard regulations constitutes spoliation of evidence.[24]

## II.  LEGAL STANDARD

Federal district courts have the inherent power to impose sanctions on a party in response to abusive litigation practices, including spoliation of evidence.[25]  Spoliation of evidence is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[26] The district court has broad discretion to fashion sanctions for spoliation under its inherent powers, but must do so with "restraint."[27]

The party seeking spoliation sanctions has the burden of establishing the elements of spoliation.[28]  The "threshold inquiry is whether evidence was altered or destroyed."[29]  If a party has destroyed evidence, the party requesting sanctions for spoliation then must establish that:  (1) the party having control over the evidence had an

---

[23] *Id.* at 5.

[24] *Id.* at 10–18.

[25] *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

[26] *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)); *May v. F/V LORENA MARIE*, No. 3:09-CV-00114-JWS-JDR, 2011 WL 5244345, at *4 (D. Alaska Nov. 2, 2011).

[27] *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion"); *Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 500 (E.D. Cal. 2010).

[28] *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).

[29] *Asfaw v. Wal-Mart Stores, Inc.*, No. 219CV01292GMNNJK, 2021 WL 2006283, at *1 (D. Nev. May 19, 2021).

obligation to preserve it when it was destroyed; (2) the evidence was destroyed with a "culpable state of mind"; and (3) "the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."[30]

After considering these factors, the Court must choose the appropriate sanction. Spoliation sanctions are determined on a case-by-case basis and should be "commensurate to the spoliating party's motive or degree of fault in destroying the evidence."[31] The Court should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."[32] Therefore, the Court may deny a request for sanctions even where the three-part test for spoliation is satisfied when the "degree of fault and level of prejudice were insufficient to justify the imposition of the sanctions."[33]

## III. DISCUSSION

### A. Plaintiff has Failed to Demonstrate that Sanctions May Be Imposed for Spoliation of Evidence that Does Not Exist

At the outset, the Court notes that the doctrine of spoliation of evidence does not directly embrace the circumstances of this case. Plaintiff alleges that Vitus had a codified duty to chemically test Mr. Dewitt for alcohol use after the grounding and, by

---

[30] *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)).
[31] *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).
[32] *Id.*
[33] *Id.*

failing to do so, "spoliated" evidence of his level of intoxication: namely, the results of the chemical test required by 46 C.F.R. § 4.06-1(b).[34] Plaintiff therefore alleges that Vitus failed to gather relevant evidence (the chemical test), not that it destroyed or materially altered evidence, making sanctions for spoliation an ill-fitting remedy. Plaintiff offers no legal authority, and the Court finds none, for the proposition that a federal court may sanction a party for "spoliating" evidence that never existed.[35] Plaintiff cites to *Stedeford v. Wal-Mart Stores, Inc.*, which involved Wal-Mart's failure to preserve video evidence of plaintiff's slip and fall,[36] as well as *Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*, which involved the defendants' destruction of business and personal documents that were relevant to the litigation.[37] The facts of these cases bear little resemblance to Vitus's failure to collect a chemical test from Mr. Dewitt on the night of the grounding.

The only other support Plaintiff relies on for her interpretation of "spoliation" is the Alaska Supreme Court case *Hibbits v. Sides*, which reversed the lower court's dismissal of plaintiff's claim for intentional third-party spoliation, an independent tort

---

[34] Docket 38 at 13.

[35] *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 650 (9th Cir. 2009) (affirming decision to strike a claim for spoliation of evidence where appellee"[did] not allege the destruction of or failure to preserve evidence, but instead contend[s] that Appellants delayed in creating a written version of the evidence); *see also Bogutz v. Arizona,* No. CV 03-454-TUC-RCC, 2009 WL 10707075, at *4 (D. Ariz. Apr. 15, 2009) ("Nor does the Plaintiff state that the Defendants failed to preserve evidence, only that a report does not exist that should exist, but probably was never made. Therefore, the Plaintiff is not entitled to an inference of spoliation since documents were not destroyed.").

[36] No. 2:14-cv-01429-JAD-PAL, 2016 WL 3462132, at *11 (D. Nev. June 24, 2016). The district court in *Stedeford* imposed sanctions only after concluding that that the video evidence actually existed. *Id.*

[37] 322 F. Supp. 3d 1027, 1035–36 (C.D. Cal. 2018).

*Garcia v. Vitus Energy, LLC*                                                    Case No. 3:20-cv-00249-JMK
Order Denying Plaintiff's Motion for Sanctions                                   Page 6
Case 3:20-cv-00249-JMK   Document 53   Filed 04/29/22   Page 6 of 15

under state law.[38]  *Hibbits* involved a law enforcement officer who, after a car accident, removed the driver from the scene for two hours, knowing that the driver was under the influence of marijuana and that the driver's condition would improve in the interim.[39]  The investigating officers thus were "not alerted to the need to test [the driver's] blood or urine."[40]  In reaching its holding, the Alaska Supreme Court stated that Plaintiff's argument that a failure to collect evidence did not equate to a failure to preserve evidence "might well have had merit" if Plaintiff alleged the police officer had negligently removed the defendant from the accident scene, instead of acting intentionally.[41]  As discussed *infra*, Plaintiff fails to adequately allege that Vitus's actions were intentional.

The power of a federal district court to impose sanctions for spoliation derives from its inherent powers.[42]  A federal district court therefore applies federal law when assessing sanctions for spoliation in a federal case.[43]  Thus, *Hibbits*, a state court case recognizing the independent tort of intentional third-party spoliation under state law, cannot justify adopting an expansive view of this Court's inherent powers to impose sanctions for spoliation here.  Reaching to interpret Vitus's failure to collect a chemical test from Mr. Dewitt as spoliation of evidence runs contrary to the principle that a federal

---

[38]  34 P.3d 327, 330 (Alaska 2001).
[39]  *Id.* at 328.
[40]  *Id.*
[41]  *Id.* at 330.
[42]  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).
[43]  *See Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993); *see also Grove v. Unocal Corp.*, No. 304-cv-00096-TMB-DMS, 2008 WL 11429530, at *9 (D. Alaska May 16, 2008), *report and recommendation adopted*, No. 3:04-cv-00096-TMB, 2008 WL 11429708 (D. Alaska June 12, 2008) ("In diversity cases such as this, federal courts apply federal law regarding sanctions for failure to preserve evidence).

district court's inherent powers must be exercised with "great restraint and discretion."[44]

Plaintiff therefore fails to establish even the "threshold inquiry" required to impose sanctions for spoliation—that Vitus destroyed, altered, or failed to preserve existing evidence.[45]

## B.     Even if Sanctions Are Available, They Are Not Appropriate in this Case

Even assuming, *arguendo*, that sanctions for spoliation are available to Plaintiff, Plaintiff has not carried her burden in demonstrating they are appropriate in this case.  Plaintiff moves the Court to strike Defendant's Answer to Claim No. 1, which relates to Plaintiff's negligence per se claim or, in the alternative, to give the jury an adverse inference instruction.[46]  The Courts addresses each of these proposed sanctions below.

### (1)     Striking Defendant's answer

Striking a defendant's Answer is "the most severe sanction" and "should not be imposed unless there is clear and convincing evidence of both bad-faith spoliation and prejudice to the opposing party."[47]  Plaintiff acknowledges that striking Vitus's Answer and awarding Plaintiff default judgment on her negligence per se claim is a terminating sanction.[48]  Before a court issues terminating sanctions it should consider:

> (a) the public's interest in expeditious resolution of litigation;
> (b) the court's need to manage its docket; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy

---

[44] *See Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012).

[45] *See Asfaw v. Wal-Mart Stores, Inc.*, No. 219-cv-01292-GMN-NJK, 2021 WL 2006283, at *1 (D. Nev. May 19, 2021).

[46] Docket 38 at 11–16.

[47] *Soule v. P.F. Chang's China Bistro, Inc.*, No. 2:18-cv-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020) (quoting *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1328–29 (Fed. Cir. 2011)).

[48] Docket 38 at 11.

*Garcia v. Vitus Energy, LLC*                                                                      Case No. 3:20-cv-00249-JMK
Order Denying Plaintiff's Motion for Sanctions                                          Page 8

Case 3:20-cv-00249-JMK   Document 53   Filed 04/29/22   Page 8 of 15

favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions.[49]

"Only 'willfulness, bad faith, and fault' justify terminating sanctions."[50]

The Court finds that a terminating sanction is not appropriate here. Plaintiff has failed to allege that Vitus acted willfully or in bad faith when it failed to chemically test Mr. Dewitt for alcohol impairment. The uncontroverted evidence shows Mr. Dewitt consumed one beer prior to returning to the JACKIE M with Plaintiff.[51] There is no evidence that anyone who interacted with Mr. Dewitt on October 19, 2018, including Plaintiff herself, believed he was impaired by alcohol.[52] Further, after learning of the skiff accident, a Vitus employee called 911 and "handed [Plaintiff and Mr. Dewitt] to the police and the ambulance."[53] Thus, Vitus's actions after the accident are quite contrary to intentionally concealing Mr. Dewitt's level of intoxication. Plaintiff argues that "the Court may infer from Defendant's subsequent failure to comply with the regulations that [Vitus] intended to conceal Capt. DeWitt's intoxication."[54] This invitation falls far short of Plaintiff's burden to prove bad faith by clear and convincing evidence.

The factors courts consider in imposing terminating sanctions also weigh against the harsh sanction requested by Plaintiff. Imposing the requested terminating sanction would dispose of one, not all, of Plaintiff's claims, so sanctions will not aid the

---

[49] *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)).
[50] *Id.*
[51] Docket 38; Docket 38-7 at 21; Docket 41 at 4, 6.
[52] *See* Docket 38-7 at 25; Docket 38-11 at 11; Docket 41 at 5.
[53] Docket 38-4 at 13.
[54] Docket 45 at 9.

expeditious resolution of litigation or the Court's need to manage its own docket.  Prejudice

to the requesting party is demonstrated if the "[spoiling party's] actions impaired [the non-

spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of

the case."[55]  To establish a *prima facie* case for negligence per se, Plaintiff must establish

that Mr. Dewitt violated Alaska Stat. § 28.35.030.[56]  A person violates Alaska Stat.

§ 28.35.030 when they operate a watercraft either "while under the influence of an

alcoholic beverage" or with a blood alcohol level of 0.08 percent or more.[57]  It is

indisputable that Plaintiff will be significantly impaired in her ability to prove this claim

without the requested sanctions.  But Plaintiff, as the "master" of her own complaint,[58] set

a high bar for herself in pleading a claim that required proof of the level of Mr. Dewitt's

intoxication, and the Court is unwilling to provide that high level of proof to Plaintiff via

sanctions.  Plaintiff's requested sanction would have the effect of ruling that Mr. Dewitt

was legally intoxicated under Alaska state law.  With the total lack of supporting evidence

that Mr. Dewitt drank more than a single beer on the night of October 19, 2018, there

simply is no way to determine that such an extreme finding is the "rightful" decision in this

case.[59]  A chemical test taken after the skiff's grounding just as easily could have revealed

Mr. Dewitt's level of intoxication was below the legal limit under Alaska state law.  The

---

[55] *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).

[56] *Blake v. Guthy-Renker, LLC*, 965 F. Supp. 2d 1076, 1082 (D. Alaska 2013) ("To be held liable for negligence per se, a defendant must have violated a law, regulation, or ordinance.").

[57] Alaska Stat § 28.35.030(a).

[58] *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021).

[59] *See Apple*, 888 F. Supp. 2d at 993 (N.D. Cal. 2012) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).

*Garcia v. Vitus Energy, LLC*                                                                            Case No. 3:20-cv-00249-JMK
Order Denying Plaintiff's Motion for Sanctions                                                      Page 10
Case 3:20-cv-00249-JMK   Document 53   Filed 04/29/22   Page 10 of 15

drastic remedy requested by Plaintiff also runs counter to this Court's strong preference for adjudicating claims on their merits.[60]  The Court addresses the availability of lesser sanctions in the next section.

> ### (2)    Adverse inference jury instruction

If the Court refuses to strike Defendant's answer, Plaintiff requests an adverse jury instruction that the "missing evidence" would support her case.[61]  The Court applies the three-part test articulated *supra* to determine if lesser sanctions for spoliation are warranted here.

Plaintiff's claim for sanctions fails the first element.  Vitus indisputably was not "in control" of a chemical sample from Mr. Dewitt that never was taken.  It therefore cannot be said to have a duty to preserve such a sample.  Plaintiff argues that "evidence is considered to be under a party's control when that party has the right, *authority*, or practical ability to obtain the evidence."[62]  While "courts have extended the affirmative duty to preserve evidence to instances when that evidence is not directly within the party's custody or control so long as the party has access to or indirect control over such evidence," these courts' tests for a party's control of evidence uniformly presume the evidence exists in the

---

[60] *See United States v. Signed Pers. Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir. 2010).

[61] Docket 38 at 17–18.  Plaintiff appears to use the distinct remedies of an adverse inference jury instruction and a rebuttable presumption interchangeably.  The Court addresses both of these sanctions separately herein.

[62] Docket 45 at 7 (citing *In re NTL, Inc. Securities Litigation*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)).

first place.[63]  Plaintiff has offered no authority for the proposition that evidence not yet in existence nonetheless is under the control of a party.

Regarding the second element, Plaintiff asserts that Vitus knew or should have known of the applicable Coast Guard regulations because (i) the Vitus executives who responded to the incident have worked in the marine transportation for decades; and (ii) emails between Vitus executives show that Vitus's CEO asked, "[i]f we fire Kevin for drinking while operating a skiff do we report that to [the United States Coast Guard]?  Of course we need all the facts first."[64]  Unlike a dispositive sanction, a sanction imposing an adverse inference jury instruction does not require a finding of bad faith.[65]  Courts in the Ninth Circuit have held that a "culpable state of mind includes negligence."[66]  However, "when the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction."[67]

Here, the Court is not persuaded that the Vitus email cited by Plaintiff reveals knowledge of the applicable regulations.  It appears to reference reporting requirements for

---

[63]  *See World Courier v. Barone*, No. C 06-3072 TEH, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007).  Courts also have held even if the party does not own or control the evidence but knows of its existence, a party "still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."  *May v. F/V LORENA MARIE*, No. 3:09-cv-00114-JWS, 2011 WL 5244345, at *5 (D. Alaska Nov. 2, 2011).  Here, Vitus knew or should have known that the relevant evidence did not exist.  Plaintiff does not allege that Vitus had any duty to alert Plaintiff to the nonexistence of relevant evidence.

[64]  Docket 38 at 5–6.

[65]  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

[66]  *Soule v. P.F. Chang's China Bistro, Inc.*, No. 2:18-cv-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020) (collecting cases).

[67]  *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 628 (C.D. Cal. 2013).

firing Mr. Dewitt, not requirements for testing Mr. Dewitt's level of intoxication.[68] The Court finds Plaintiff's argument that Vitus executives knew or should have known of the applicable Coast Guard regulations far more persuasive. However, testimony from one Vitus executive shows that he assumed the Dillingham police would perform alcohol testing as appropriate after the grounding.[69] There also is evidence that Vitus executives were not aware of the extent of Ms. Garcia's injuries immediately after the grounding.[70] While these assumptions may fall below Vitus's duty to "take all practicable steps" to ensure Mr. Dewitt was tested for alcohol intoxication on the night of the grounding, at most Plaintiff has established that Vitus was negligent in failing to follow up with local police or otherwise immediately verify whether the accident qualified as a "serious marine incident."

Plaintiff has not met her burden in establishing the third factor. The results of a hypothetical chemical test undoubtedly would be relevant to Plaintiff's claims. However, there is no basis on which a trier of fact could conclude that the unknown results of a chemical test would support Plaintiff's claim that Mr. Dewitt was legally impaired by alcohol in violation of Alaska Stat. § 28.35.030. Alaska Stat. § 28.35.030 imposes a technical, legal standard for alcohol intoxication.[71] Plaintiff can prove only that Mr. Dewitt drank a single beer on October 19, 2018, and, as such, there is no way to reasonably infer Mr. Dewitt's level of intoxication at the time of the grounding. Given the absence of

---

[68] *See* Docket 38-13.
[69] *See* Docket 42-3 at 10.
[70] *See id.* at 6.
[71] *See Valentine v. State,* 215 P.3d 319, 325 (Alaska 2009).

admissible evidence or testimony regarding Mr. Dewitt's level of intoxication, a trier of fact's conclusion as to what a chemical test might have revealed would amount to nothing more than a guess.

While Plaintiff characterizes an adverse jury instruction as a "lesser sanction" than a default judgment on her negligence per se claim, this is a distinction of form rather than substance.[72] As Plaintiff acknowledges, "[t]he purpose of an adverse inference is 'to restore evidentiary balance and [ensure that] the risk [] fall[s] on the party responsible for the loss.'"[73] However, an adverse inference instruction here would do much more than restore the evidentiary balance. It would cause the pendulum to swing too far the other way—the practical effect of an adverse instruction would amount to a claim-dispositive sanction. Plaintiff does not explain how a jury could infer the missing chemical test results were favorable to Plaintiff without concluding that Mr. Dewitt was impaired by alcohol under Alaska Stat. § 28.35.030 on October 19, 2018. Similarly, if the Court were to impose a rebuttable presumption that the "missing evidence" supported Plaintiff's claim for negligence per se, this essentially would command a ruling in Plaintiff's favor. Vitus, of course, would have no means with which to rebut such a strong presumption without the chemical test. Thus, in this case, "lesser sanctions" have the same stringent result as dispositive sanctions.

---

[72] *See* Docket 38 at 17.
[73] Docket 38 at 18 (quoting *Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2018 WL 2149223, at *9 (S.D. Cal. May 10, 2018)).

*Garcia v. Vitus Energy, LLC*                                               Case No. 3:20-cv-00249-JMK
Order Denying Plaintiff's Motion for Sanctions                                               Page 14
Case 3:20-cv-00249-JMK   Document 53   Filed 04/29/22   Page 14 of 15

Ultimately, a sanction for spoliation must be commensurate with the spoliator's fault.[74] At most, Plaintiff has established that Vitus employees were negligent in failing to ensure compliance with the applicable Coast Guard regulations. Although the Court is sympathetic to Plaintiff's plight, and by no means condones Defendant's potential failure to comply with Coast Guard regulations, Vitus's conduct does not warrant sanctions for spoliation of evidence. The severe implications of Plaintiff's requested sanctions far outweigh Vitus's purported fault. Indeed, the nature of a negligence per se claim, which requires proof of a violation of a statute,[75] makes it difficult to impose any sanction that would account for Vitus's failure to test Mr. Dewitt without essentially establishing the claim for the trier of fact. Plaintiff acknowledges that the Court's refusal to impose sanctions likely will be fatal to her negligence per se claim; however, the Court cannot impose sanctions for spoliation in a case in which Plaintiff has failed to meet her burden of establishing that such sanctions are both available and appropriate.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's First motion for Sanctions is DENIED.

IT IS SO ORDERED this 29th day of April, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[74] *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).
[75] *Blake v. Guthy-Renker, LLC*, 965 F. Supp. 2d 1076, 1082 (D. Alaska 2013).

*Garcia v. Vitus Energy, LLC*                                                    Case No. 3:20-cv-00249-JMK
Order Denying Plaintiff's Motion for Sanctions                                   Page 15
Case 3:20-cv-00249-JMK   Document 53   Filed 04/29/22   Page 15 of 15