IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CHRISTINA GARCIA,

            Plaintiff,

vs.

VITUS ENERGY, LLC,

            Defendant.

Case No. 3:20-cv-00249-JMK

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant Vitus Energy LLC's ("Vitus") Motion for Partial Summary Judgment and Partial Judgment on the Pleadings ("Motion for Partial Summary Judgment") at Docket 46. Plaintiff Christina Garcia responded in opposition at Docket 49. Vitus replied at Docket 48. For the foregoing reasons, Vitus's Motion for Summary Judgment is **GRANTED IN PART.**

## I.  FACTUAL BACKGROUND

### A.  The JACKIE M Skiff

Defendant Vitus is the owner and operator of the JACKIE M, a 61-foot, 14-ton tugboat.[1] The JACKIE M is a United States Coast Guard documented vessel.[2] As is

---

[1] Docket 46 at 2.
[2] *Id.*

common for tugboats working in Alaska, the JACKIE M uses skiffs to guide the tugboat and take depth soundings.[3]  In October 2018, the skiff used to support the JACKIE M ("the skiff") was an 18-foot aluminum boat equipped with a 75-horsepower engine.[4]  Plaintiff alleges that the skiff did not have any lighting or seating.[5]

## B.    Plaintiff Meets Mr. Kevin Dewitt

In October 2018, Mr. Kevin Dewitt was the captain of the JACKIE M, having been hired by Vitus earlier in the season.[6]  Vitus's Director of Marine Operations Luther Bartholomew testified that Mr. Dewitt met the requirements for the position of captain at the time he was hired.[7]  Mr. Bartholomew stated that Mr. Dewitt "would have been in the top tier captains or operators on western rivers based on his experience, based on his knowledge, based on his license and based on his endorsements that he currently had."[8]

Plaintiff testified that she met Mr. Dewitt in October 2018 at the Sea Inn Bar in Dillingham, Alaska.[9]  Mr. Dewitt was accompanied by two other Vitus employees, Engineer Scott Edwards and Deckhand Jonathan Russo.[10]  Plaintiff testified that the group drank "a lot" that night, staying at the bar until it closed.[11]  Mr. Dewitt and Plaintiff stayed in contact after meeting and made plans to meet again the following Friday.[12]

---

[3] *Id.*
[4] *Id.*
[5] Docket 49 at 3–4; Docket 49-13 at 3.
[6] Docket 49 at 1–2.
[7] Docket 49-2 at 5.
[8] *Id.*
[9] *See* Docket 49 at 4; Docket 49-6 at 3.
[10] Docket 49 at 4; Docket 49-6 at 3.
[11] Docket 49-6 at 4.
[12] *Id.* at 6; Docket 49-13 at 2.

*Garcia v. Vitus Energy, LLC*                                        Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                Page 2
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 2 of 45

## C. The October 19, 2018 Grounding of the Skiff

That Friday, October 19, 2018, Mr. Dewitt told the crew of the JACKIE M that he was going to Dillingham to meet someone.[13] Mr. Dewitt then traveled to Dillingham in the skiff to meet Plaintiff at the Sea Inn Bar.[14] Mr. Dewitt arrived at the bar after Plaintiff.[15] Plaintiff testified that Mr. Dewitt did not appear intoxicated when he arrived.[16] In support of her opposition to Vitus's Motion for Summary Judgment, Plaintiff submitted an affidavit reiterating that Mr. Dewitt did not appear intoxicated when he arrived at the bar on October 19, 2018, but stating that she could "smell[] alcohol on his breath."[17] In an answer to one of Vitus's interrogatories, Plaintiff indicated that she "now believes that Mr. Dewitt had been drinking prior to arriving at the bar."[18]

Mr. Dewitt drank one beer at the bar, which Plaintiff bought for him.[19] Shortly after arriving, Mr. Dewitt told Plaintiff that he had forgotten his wallet on the JACKIE M and asked Plaintiff if she would like to accompany him to retrieve it.[20] Plaintiff agreed, and the pair boarded the skiff.[21] At the time Plaintiff and Mr. Dewitt left the bar, it was dark outside.[22] Plaintiff alleges that Mr. Dewitt did not provide her with a life jacket.[23] Plaintiff testified that there was nowhere for her to sit in the skiff, so she braced

---

[13] Docket 49 at 3; Docket 49-9 at 3.
[14] Docket 49 at 3; Docket 49-9 at 3.
[15] Docket 49-6 at 6.
[16] *Id.* at 9.
[17] Docket 49-13 at 2.
[18] Docket 51-1 at 5.
[19] Docket 49 at 4; Docket 49-6 at 6.
[20] Docket 49 at 4; Docket 49-6 at 6.
[21] Docket 49-6 at 6.
[22] Docket 49 at 4; Docket 49-12 at 1.
[23] Docket 49-13 at 3.

*Garcia v. Vitus Energy, LLC*      Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment     Page 3

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 3 of 45

herself against "the cabinet."[24]  Plaintiff and Mr. Dewitt arrived at the JACKIE M and Plaintiff greeted the crew and toured their sleeping quarters.[25]  Engineer Edwards testified that he thought Plaintiff and Mr. Dewitt were in "party mode" and "were just happy and running around the boat."[26]  After Mr. Dewitt went to his living quarters to retrieve his wallet, Mr. Dewitt and Plaintiff left the JACKIE M aboard the skiff.[27]  Vitus had a company policy that the skiff was to be used "for Vitus Marine business only – NOT FOR PERSONAL USE."[28]  The JACKIE M crew members did not question Mr. Dewitt's authority to use the skiff to transport Plaintiff that evening.[29]

As the pair traveled back to Dillingham in the skiff, Plaintiff again braced herself against the console.[30]  Mr. Dewitt testified that "the water was high, the shore was very low . . . it was only three feet up off of the waterline so in the darkness it was hard to see."[31]  Mr. Dewitt misjudged their location and the skiff struck a sandbar and became grounded.[32]  Mr. Dewitt and Plaintiff were thrown into the skiff's consoles, which broke free from the skiff.[33]  Both Mr. Dewitt and Plaintiff suffered lacerations to their heads.[34]

---

[24] Docket 49-6 at 6.
[25] Docket 49-6 at 6; Docket 49-13 at 3.
[26] Docket 49-5 at 4.
[27] Docket 49-6 at 6; Docket 49-7 at 5.
[28] Docket 49-19 at 1.
[29] Docket 49-13 at 3.
[30] Docket 49-6 at 6–7.
[31] Docket 49-7 at 7.
[32] Docket 49-7 at 11; Docket 49-13 at 4.
[33] Docket 49 at 5; Docket 49-7 at 11.
[34] Docket 49-6 at 7; Docket 49-7 at 8.

*Garcia v. Vitus Energy, LLC*                                                                 Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                                           Page 4
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 4 of 45

## D. After the Grounding

Immediately after the grounding, Plaintiff and Mr. Dewitt used their cell phones for lighting.[35] Plaintiff testified that Mr. Dewitt "freaked out" and was hesitant to contact the crew of the JACKIE M for assistance.[36] Mr. Dewitt tripped and fell into the water.[37] He then tried unsuccessfully to push the skiff off the shore.[38] At Plaintiff's behest, Mr. Dewitt called the crew of the JACKIE M.[39] The crew of the JACKIE M traveled to the location of the skiff and hoisted the skiff onto the tug.[40] After Mr. Dewitt and Plaintiff were aboard the tug, Engineer Edwards called Vitus's office to report the accident and spoke with Mark Smith, Vitus's Chief Strategic Officer.[41] After speaking with Mr. Smith, Engineer Edwards called 911.[42] The crew of the JACKIE M then dropped Mr. Dewitt and Plaintiff off at the dock in Dillingham, where they were met by Emergency Medical Technicians and a local police officer.[43] The police officer spoke with Mr. Dewitt but did not speak with Plaintiff.[44] Mr. Dewitt and Plaintiff were transported to Kanakanak Hospital in Dillingham via ambulance.[45] At the hospital, Plaintiff and Mr. Dewitt each received treatment for the lacerations on their heads.[46] Plaintiff and Mr. Dewitt were

---

[35] Docket 49-7 at 6.
[36] Docket 49-13 at 4.
[37] *Id.*; Docket 49-7 at 7.
[38] Docket 49-13 at 4.
[39] *Id.*
[40] Docket 49-5 at 5–6; Docket 49-13 at 4.
[41] Docket 49-5 at 7.
[42] Docket 49-5 at 6–7.
[43] Docket 49-5 at 7; Docket 49-7 at 8; Docket 49-13 at 4.
[44] Docket 49-13 at 4; Docket 49-7 at 8.
[45] Docket 49 at 7; Docket 49-6 at 7; Docket 49-7 at 8.
[46] Docket 49 at 7; Docket 49-6 at 7.

discharged from the hospital that same evening and went to Plaintiff's apartment.[47] At Plaintiff's house, Plaintiff attested that Mr. Dewitt produced a half-consumed bottle of alcohol from his jacket pocket and took a drink.[48] Mr. Dewitt denies that he consumed alcohol at Plaintiff's home after the grounding.[49]

Hours after the grounding, at 5:47 a.m., Vitus CEO Justin Charon, sent an email to CSO Mark Smith, asking "[w]ho called you and gave you the report? Local police? If we fire [Mr. Dewitt] for drinking while operating a skiff do we report that to the [United States Coast Guard]? Of course we need all the facts first."[50] There is no evidence that Mr. Dewitt was tested for alcohol impairment, either through a saliva swab, breathalyzer, or blood sample, at any point on the night of October 19, 2018.[51]

## II. LEGAL STANDARDS

### A. Summary Judgment

Vitus moves for summary judgment on Plaintiff's negligence per se, negligent entrustment, and vicarious liability claims.[52] Vitus moves for judgment on the pleadings or, in the alternative, summary judgment on Plaintiff's negligent hiring, training, and supervision claim and punitive damages claim.[53] Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[47] Docket 49-6 at 8.
[48] Docket 49-13 at 5.
[49] Docket 49-7 at 9.
[50] Docket 49 at 7; Docket 49-17.
[51] Docket 49 at 8; Docket 49-7 at 10.
[52] Docket 46.
[53] *Id.*

*Garcia v. Vitus Energy, LLC*  Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment  Page 6

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 6 of 45

of law." A material fact is "one that might allow judgment in favor of the party opposing summary judgment."[54] The party moving for summary judgment has the burden of demonstrating there is no genuine dispute as to any material fact.[55] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only prove there is an absence of evidence of a genuine dispute as to any material fact.[56] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[57] The nonmoving party's burden "is not a light one."[58] The nonmoving party must come forth with competent "evidence from which a jury could reasonably render a verdict in the nonmoving party's favor."[59] The nonmoving party may not simply rest on allegations and denials in its pleading[60] and must show "more than the mere existence of a scintilla of evidence."[61] All evidence presented by the nonmoving party must be believed for purposes of summary judgment and all justifiable inferences are to be drawn in its favor.[62] A court's function on summary judgment is not to weigh evidence or determine the truth of the matter, but rather, to determine if there are genuine issues for trial.[63]

---

[54] *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1013 (9th Cir. 1994).
[55] *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016).
[56] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[57] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).
[58] *Id.*
[59] *Id.*
[60] *Snead v. Wright*, 427 F. Supp. 3d 1133, 1137–38 (D. Alaska 2019) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).
[61] *In re Oracle Corp. Sec. Litig.,* 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252).
[62] *Anderson*, 477 U.S. at 255.
[63] *Id.* at 249.

*Garcia v. Vitus Energy, LLC*                                                                      Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                                      Page 7

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 7 of 45

## B. Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."[64] A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, as both require the court to assess the legal sufficiency of the claims asserted in the complaint.[65] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[66] If the court converts a Rule 12(c) motion into one for summary judgment, all parties must be given a reasonable opportunity to present all the material pertinent to that motion.[67] Here, Vitus did not specifically rely on extrinsic evidence in moving for judgment on the pleadings as to Plaintiff's claims for negligent hiring, training, and supervision and punitive damages.[68] However, because the Court has the benefit of the entire summary judgment record before it, and because both parties are on notice, the Court will exercise its discretion and consider Vitus's Motion

---

[64] *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).
[65] *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d 210, 219 (N.D. Cal. 2019) (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).
[66] Fed. R. Civ. P. 12(d).
[67] *Id.*
[68] *See* Docket 46 at 18–20; 22–25.

*Garcia v. Vitus Energy, LLC*                                      Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment          Page 8

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 8 of 45

regarding Plaintiff's claim for negligent, hiring, training, and supervision and punitive damages under the Rule 56 standard.[69]

## III.  DISCUSSION

### A.    Choice of Law

As a preliminary matter, the parties appear to disagree about the substantive law applicable to this case.  Vitus asserts that federal maritime law applies, while Plaintiff consistently applies Alaska state law.[70]  This case invokes the Court's diversity jurisdiction.[71]  While this Court normally would apply the law of the forum state in diversity cases, "if the case sounds in admiralty the Court must apply federal admiralty law."[72]  Thus, "if the district court could have maritime jurisdiction over a tort claim, 'substantive maritime law controls' the claim, 'whatever the forum or asserted basis of jurisdiction.'"[73]

Maritime law applies to tort claims that "satisfy conditions both of location and of connection with maritime activity."[74]  To determine whether the location element is satisfied, courts consider "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."[75]  The connection element

---

[69]  *See Zavala v. Kruse-W., Inc.*, No. 1:19-cv-00239-DAD-SKO, 2021 WL 5890200, at *7 (E.D. Cal. Dec. 13, 2021).

[70]  *See* Docket 46 at 8–9; Docket 49 at 10–34.

[71]  *See* Docket 1 at 1–2.

[72]  *Dominique v. Holland Am. Line, N.V.*, No. C12-78RSL, 2013 WL 5437436, at *1 (W.D. Wash. Sept. 27, 2013) (citing *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3rd Cir. 2002)).

[73]  *Adamson v. Port of Bellingham*, 907 F.3d 1122, 1126 (9th Cir. 2018) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 366 n.1 (9th Cir. 1992)).

[74]  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

[75]  *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1128 (9th Cir. 2009) (quoting *Grubart,* 513 U.S. at 534).

*Garcia v. Vitus Energy, LLC*                                          Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                          Page 9
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 9 of 45

hinges on (1) "whether the incident has a potentially disruptive impact on maritime commerce"; and (2) "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[76]  As for the first prong, the Ninth Circuit "takes an inclusive view of what general features of an incident have a potentially disruptive effect on maritime commerce."[77]  Regarding the second prong, courts look to the "tort claim's general features, rather than at its minute particulars, to assess whether there is the requisite connection."[78]  However, the Supreme Court has cautioned against describing a tortfeasor's activity at such a hyper-generalized level as to "eliminate any hint of maritime connection."[79]  The Court has acknowledged that ordinarily activities "involving a vessel on navigable waters fall[] within the scope of admiralty jurisdiction" when described with the appropriate level of generality.[80]

The location element clearly is met here, as the tort in question occurred on navigable waters outside Dillingham, Alaska.[81]  Regarding the connection element, the general character of the activity giving rise to the incident is best described as the allegedly negligent operation of a skiff resulting in harm to the passengers.[82]  The first prong of the

---

[76] *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 840 (9th Cir. 2002) (quoting *Grubart, 513 U.S. at 534*) (internal quotation marks omitted)).

[77] *Mission Bay Jet Sports,* 570 F.3d at 1128; *see also Sisson v. Ruby,* 497 U.S. 358, 363 (1990) (noting that courts determine an activity's "potential impact . . . by examining its general character" not the "*actual* effects on maritime commerce" nor "the particular facts of the incident" that may have rendered it more or less likely to disrupt commercial activity.).

[78] *Ali v. Rogers*, 780 F.3d 1229, 1235 (9th Cir. 2015).

[79] *Grubart,* 513 U.S. at 541–42.

[80] *Id.* at 543.

[81] Docket 1 at 2–3.

[82] *See Mission Bay Jet Sports*, 570 F.3d at 1129 (describing the incident at issue as "as harm by a vessel in navigable waters to a passenger.").

*Garcia v. Vitus Energy, LLC*                                                        Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                               Page 10
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 10 of 45

connection element is satisfied, as an incident of this nature has a potentially disruptive impact on maritime commerce, especially considering the damage to the skiff and the fact that the JACKIE M crew assisted with the rescue.[83]  The second prong also is satisfied, as this case falls into the "typical maritime tort scenario" where the "general character of the activity giving rise to the incident" was the navigation of a vessel by a maritime employee.[84]  Therefore, given the Supreme Court's instruction to characterize the relevant activity generally, but not so generally as to obscure the maritime context, the connection element is met.[85]

This case satisfies both the location and connection elements; therefore, maritime law provides the substantive standard for assessing Plaintiff's claims on Vitus's Motion for Partial Summary Judgment.[86]  Federal maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."[87] The application of maritime law "does not result in automatic displacement of state law."[88] Rather, a fundamental feature of maritime law is that "federal admiralty courts sometimes

---

[83]  *See id.* ("[A] vessel from which a passenger goes overboard in navigable waters would likely stop to search and rescue, call for assistance from others—which, in this area, could include the Coast Guard and in fact did involve another vessel—and ensnarl maritime traffic in the lanes affected.").

[84]  *See Gruver v. Lesman Fisheries Inc.*, 489 F.3d 978, 983 (9th Cir. 2007).

[85]  *See id.* at 986.

[86]  *See Adamson v. Port of Bellingham*, 907 F.3d 1122, 1126 (9th Cir. 2018).

[87]  *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986).

[88]  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995).

*Garcia v. Vitus Energy, LLC*                                                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                    Page 11
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 11 of 45

do apply state law"[89] and "state law may be used to supplement federal maritime law so long as state law is 'compatible with substantive maritime policies.'"[90]

## B.    Vitus's Motion to Strike

A "court can only consider admissible evidence in ruling on a motion for summary judgment."[91]  Accordingly, in ruling on Vitus's Motion for Partial Summary Judgment, the Court did not consider evidence that it deemed inadmissible in its Order on Vitus's Motion *in Limine* at Docket 54.  Additionally, "a party may object to the admissibility of evidence on summary judgment without filing a separate motion to strike."[92]  In its reply in support of its Motion for Partial Summary Judgment, Vitus moves to strike several exhibits submitted with Plaintiff's opposition, arguing these exhibits contain inadmissible evidence.[93]  Vitus requests that the Court strike (1) Plaintiff's affidavit that she submitted with her opposition; (2) "the hearsay and speculative statements contained in" Plaintiff's affidavit; and (3) several unauthenticated exhibits submitted with Plaintiff's opposition.[94]

### 1.    Plaintiff's affidavit

Vitus moves to strike Plaintiff's affidavit, arguing that it raises new issues of fact that contradict Plaintiff's previous testimony.[95]  Vitus contends that the affidavit is a

---

[89]  *Id.* at 546.
[90]  *Espinoza v. Princess Cruise Lines, Ltd.*, No. 2:17-cv-08412-FLA JEM(x), 2022 WL 422782, at *13 (C.D. Cal. Jan. 25, 2022) (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 207 (1996)).
[91]  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).
[92]  *Everett v. Am. Gen. Life Ins. Co.*, 703 F. App'x 481, 482 (9th Cir. 2017).
[93]  Docket 50 at 2–4.
[94]  *Id.*
[95]  *Id.* at 2–3; *see also* Docket 49-13.

*Garcia v. Vitus Energy, LLC*                                                  Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                    Page 12
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 12 of 45

"sham" submitted solely for the purpose of defeating summary judgment.[96]   There is a "general rule in the Ninth Circuit that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."[97]   The sham affidavit rule is necessary because "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."[98]   However, the Ninth Circuit has advised that the sham affidavit rule "should be applied with caution," as it is in tension with the fundamental principle that courts deciding a motion for summary judgment may not make credibility determinations or weigh conflicting evidence.[99]   Therefore, to justify striking an affidavit as a sham, courts must (a) "make a factual determination that the contradiction is a sham" and (b) determine that "the inconsistency between a party's deposition testimony and subsequent affidavit is clear and unambiguous . . . ."[100]   New facts in an affidavit, when accompanied by a reasonable explanation, "should not ordinarily lead to the striking of [an affidavit] as a sham."[101]

       Vitus asserts that Plaintiff claimed for the first time in her affidavit that she smelled alcohol on Mr. Dewitt's breath when he arrived at the Sea Inn Bar in Dillingham

---

[96] Docket 50 at 2–3.
[97] *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)).
[98] *Van Asdale*, 577 F.3d at 998 (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).
[99] *Yeager*, 693 F.3d at 1080 (quoting *Van Asdale*, 577 F.3d at 998)).
[100] *Id.* (quoting *Van Asdale*, 577 F.3d at 998–99)).
[101] *Id.* at 1081.

*Garcia v. Vitus Energy, LLC*      Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment      Page 13

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 13 of 45

on October 19, 2018, and again later when Mr. Dewitt and Plaintiff were boarding the skiff to return to Dillingham from the JACKIE M.[102] Vitus claims these allegations are inconsistent with Plaintiff's sworn responses to Vitus's Interrogatories, in which she was asked to describe "each and every fact and sequence of events Plaintiff contends caused her to be injured and that form the basis of her claims against Vitus."[103] Plaintiff's response detailed the evening of October 19, 2018, but did not mention Mr. Dewitt smelling like alcohol at any point.[104] When describing the evening of the grounding in her deposition, Ms. Garcia likewise made no mention of having smelled alcohol on Mr. Dewitt's breath, testifying that Mr. Dewitt did not appear intoxicated when he arrived at the Sea Inn Bar and stating, "[h]e looked clean, fresh."[105]

Plaintiff's failure to allege that Mr. Dewitt smelled like alcohol when he arrived at the Sea Inn Bar in both her deposition testimony and interrogatory response gives the Court pause as to whether her affidavit is a sham. However, in an answer to another of Vitus's interrogatories, Plaintiff mentioned that she "now believes that Mr. Dewitt had been drinking prior to arriving at the bar."[106] This statement is enough to reconcile the inconsistency between Plaintiff's previous testimony and her assertion in her affidavit that Mr. Dewitt smelled like alcohol when he arrived at the Sea Inn Bar on the night of October 29, 2018.

---

[102] Docket 50 at 2–3; Docket 49-13 at 2, 4.
[103] Docket 50 at 2; Docket 51-1 at 3.
[104] Docket 50 at 2; Docket 51-1 at 3–5.
[105] Docket 50 at 2–3; Docket 47-1 at 15.
[106] Docket 51-1 at 5.

The affidavit's statement that "[Plaintiff] still could smell alcohol on [Mr. Dewitt's] breath" when they left the JACKIE M for Dillingham is, however, more problematic.[107]   Plaintiff's failure to assert this fact in depositions and answers to interrogatories was not explained in her affidavit or elsewhere.[108]  This Court finds that this new fact is arguably incompatible with Plaintiff's previous testimony, but it does not present an inconsistency that is so "clear and ambiguous" as to justify employing the sham affidavit rule.[109]  While a close question, given the caution with which the sham affidavit rule must be applied, this Court concludes that striking this statement from Plaintiff's affidavit veers too far into the jury's role of engaging in credibility determinations or weighing evidence.[110]  Although the Court expresses a fair amount of skepticism regarding Plaintiff's newly asserted allegation that Mr. Dewitt smelled like alcohol in the moments before the grounding, it is for the trier of fact to weigh the credibility of these statements.

Finally, Vitus asserts that, in Plaintiff's First Motion for Sanctions for Spoliation of Evidence, filed at Docket 38, Plaintiff made "an intentional, binding judicial admission that there is no 'dispositive or circumstantial evidence of Capt. DeWitt's level of intoxication.'"[111]  Vitus contends that Plaintiff also admitted that there was "insufficient evidence" to meet her burden of proof on her negligence per se claim.[112]  Vitus argues that

---

[107]  Docket 49-13 at 4.
[108]  *See generally id.*
[109]  *See Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009)).
[110]  *See Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).
[111]  Docket 50 at 3 (quoting Docket 38 at 15–16).
[112]  *Id.*

*Garcia v. Vitus Energy, LLC*                                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                    Page 15
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 15 of 45

Plaintiff should be bound by these admissions.[113]   The Ninth Circuit has held that "statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court."[114]   As Plaintiff's statements are not statements of fact, but rather, arguments made in support of sanctions, the Court declines to treat these statements as binding judicial admissions.   Vitus's Motion to Strike inconsistent statements in Plaintiff's affidavit is therefore **DENIED WITHOUT PREJUDICE.**

### 2.      Hearsay statements in Plaintiff's affidavit

Vitus also moves to strike the "hearsay and speculative statements" contained in Plaintiff's affidavit.[115]  Hearsay is an out of court statement that "a party offers in evidence to prove the truth of the matter asserted."[116]  "Inadmissible hearsay cannot be used to establish material facts on a summary judgment motion."[117]   In her affidavit, Plaintiff claims that, a week before the grounding, Vitus employee Scott Edwards told her that Mr. Dewitt was "an alcoholic and had fallen off the wagon."[118]  In opposing summary judgment, Plaintiff relies on this statement as evidence that Mr. Dewitt was, in fact, an alcoholic who had relapsed; in other words, Mr. Edwards' statement is hearsay as it is being offered for the truth of the matter asserted.[119]   Vitus correctly points out that, although

---

[113]   *See id.*

[114]   *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (emphasis in original); *see also Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) (collecting cases).

[115]   Docket 50 at 3–4.

[116]   Fed. R. Evid. 801(c).

[117]   *Roness v. T-Mobile USA, Inc.*, No. C18-1030-RSM, 2019 WL 2918234, at *2 (W.D. Wash. July 8, 2019).

[118]   Docket 49-13 at 2; *see also* Docket 49 at 4; Docket 44-5 at 3.

[119]   *See* Docket 49 at 4, 14, 15 (noting "a reasonable juror could find that Capt. DeWitt's was an alcoholic whose personal life was taking a toll on him and that he broke his sobriety,

*Garcia v. Vitus Energy, LLC*                                                                 Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                         Page 16

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 16 of 45

Mr. Edwards was a Vitus employee, his statement does not constitute an opposing party's statement under Federal Rule of Evidence 801 because he was not speaking on a matter within the scope of his employment relationship.[120] As no other hearsay exception appears to apply, and Plaintiff offering none, the Court strikes this statement and will not consider it on this Motion for Partial Summary Judgment.

Plaintiff offers evidence that a gesture Mr. Dewitt made in response to Mr. Edwards's statement—raising his glass—proves that statement's truth.[121] Plaintiff also alleges that Mr. Dewitt "implicitly admitted" he was drinking on the night of October 19, 2018, when he was silent after Plaintiff said, "I knew it. I knew you were drinking."[122] Although not statements in the common sense, the gesture and silence are "statements" for purposes of the ban on hearsay.[123] These out of court "statements" are being offered to prove the truth of the matter asserted, namely, that Mr. Dewitt agreed with the speaker's statement.[124] They are not adopted admissions nor opposing party statements

---

drinking to excess, in the week before the grounding and consumed alcohol on the night of the grounding.").

[120] Fed. R. Evid. 801(d)(2)(D) (providing that a statement offered against an opposing party that was made by a party's employee on a matter within the scope of that relationship is not hearsay).

[121] *See* Docket 49 at 12 ("Just one week prior to the grounding, Capt. DeWitt consumed alcohol to excess and implicitly admitted he had 'fallen off the wagon'"); *see also id.* at 14–15; Docket 49-6 at 4; Docket 49-13 at 2.

[122] *See* Docket 49 at 13 ("After obtaining medical care, Capt. DeWitt began consuming alcohol again and implicitly admitted to Ms. Garcia that he had been intoxicated when he operated the watercraft."); Docket 49-13 at 5.

[123] *See* Fed. R. Evid. 801(a) (providing that a "statement" in the rule against hearsay means "a party's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."); *see also Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.,* No. 2:11-CV-3045-RMP, 2020 WL 1318792, at *19 (E.D. Wash. Mar. 20, 2020)*, appeal dismissed sub nom.* No. 20-35434, 2020 WL 6731483 (9th Cir. Aug. 21, 2020) (finding a nod inadmissible hearsay).

[124] *See* Docket 49 at 12, 13.

*Garcia v. Vitus Energy, LLC*                                             Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                    Page 17

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 17 of 45

because Mr. Dewitt is not a party to this action and was not communicating on a matter within the scope of his employment relationship with Vitus.[125] The Court concludes that Mr. Dewitt's gesture and silence constitute inadmissible hearsay under Federal Rule of Evidence 801 and do not appear to fall within the hearsay exceptions enumerated in Federal Rules of Evidence 803 and 804. The Court therefore strikes these "statements" for the purposes of Vitus's Motion for Partial Summary Judgment. Accordingly, Vitus's Motion to Strike is **GRANTED** as to the hearsay statements contained in Plaintiff's affidavit. The Court emphasizes these hearsay statements are only stricken for the purposes of this Motion. These statements may be considered at a later stage in the proceeding if Plaintiff is able to offer them in admissible form.

### 3. Unauthenticated exhibits

Finally, Vitus requests that this Court strike the following exhibits filed with Plaintiff's opposition: (a) a printout from the Hazelden Betty Ford Foundation regarding alcoholism;[126] (b) a printout from the Alaska Department of Fish and Game describing the Nushagak River;[127] and (c) a Coast Guard Auxiliary paper.[128] Vitus asserts that Plaintiff failed to authenticate these documents and, as such, they constitute inadmissible hearsay.[129] The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."[130] Plaintiff's exhibits appear to be

---

[125] *See* Fed. R. Evid. 801(d)(2)(B), (D).
[126] Docket 49-10.
[127] Docket 49-11.
[128] Docket 49-25.
[129] Docket 50 at 4.
[130] *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

*Garcia v. Vitus Energy, LLC*                                          Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                Page 18

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 18 of 45

printouts from various websites.[131]  They have not been authenticated by any of the means articulated in Federal Rules of Evidence 901 or 902.  The Court therefore **GRANTS** Vitus's Motion to Strike as to these unauthenticated exhibits and will not consider them on this Motion for Partial Summary Judgment.[132]

## C.    Vitus's Motion for Partial Summary Judgment

Vitus moves for summary judgment on "all of Plaintiff's claims asserted against it," namely, Plaintiff's claims for negligence per se; negligent entrustment; negligent hiring, training, and supervision; vicarious liability; and punitive damages.[133] Vitus also moves for judgment on the pleadings on Plaintiff's negligent hiring, training, and supervision claim and punitive damages claim.[134]  Vitus notes that the only claim on which it "does not move to dismiss is Plaintiff's negligence claim against non-party Kevin Dewitt."[135]  At the outset, this Court notes that Vitus's position is a peculiar one—it moved for summary judgment on Plaintiff's negligence per se claim, which pertains only to the actions of non-party Kevin Dewitt, but did not move for summary judgment on Plaintiff's negligence claim, which similarly is solely concerned with the conduct of Mr. Dewitt.[136] Vitus's distinction between these two claims, which both lack allegations of direct conduct

---

131 *See* Docket 49-10; Docket 49-11; Docket 49-25.
132 *See Haines v. Home Depot U.S.A., Inc.*, No. 1:10-cv-01763-SKO, 2012 WL 1143648, at *7 (E.D. Cal. Apr. 4, 2012) (sustaining evidentiary objection to website page that was not properly authenticated).
133 *See generally* Docket 46.
134 *Id.* at 1.
135 Docket 46 at 1 n.1.
136 *See* Docket 1 at 3–4.

*Garcia v. Vitus Energy, LLC*                                                                 Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                      Page 19
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 19 of 45

against Vitus, is perplexing. Nonetheless, the Court addresses each of the claims on which Vitus seeks summary judgment below.

## 1.    Negligence per se

Plaintiff brings a claim for negligence per se, alleging that Mr. Dewitt violated Alaska Statute ("AS") 28.35.030 when he operated Vitus's skiff while under the influence of an alcoholic beverage.[137]   Courts do not consistently apply the doctrine of negligence per se in the context of federal maritime law.[138]   While federal maritime law recognizes an analog of negligence per se in the Pennsylvania Rule, "unlike negligence *per se* . . . the Pennsylvania Rule creates a presumption of causation, not a presumption of negligence."[139]   In the absence of well-developed maritime law pertaining to Plaintiff's negligence per se claim, the Court will incorporate common law principles and Alaska state law.[140]   Alaska state law recognizes that "the violation of a regulation or statute amounts

---

[137]   *Id.*

[138]   *See Tau v. F/V Saint Jude,* 227 F. App'x 663, 664 (9th Cir. 2007)  (stating "[t]here is no maritime theory of strict liability or negligence *per se* under which [Defendants] could be liable for [Plaintiff's] injuries."); *Park v. Stockstill Boat Rentals, Inc.,* 492 F.3d 600, 602–03 (5th Cir. 2007) (acknowledging the applicability of negligence per se under the Jones Act); *Marshall v. Isthman Lines, Inc.,* 334 F.2d 131, 134 (5th Cir. 1964) (applying the theory of negligence per se embodied in Restatement (First) of Torts § 286 (1934) to a maritime negligence action); *Saunders v. Consumers Energy Co.*, No. 1:19-cv-782, 2021 WL 5367424, at *8 (W.D. Mich. Nov. 15, 2021) (discussing the five elements of negligence per se in admiralty cases pursuant to the Jones Act); *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2014 WL 12516074, at *4 (S.D. Fla. Dec. 11, 2014) (dismissing cause of action for negligence per se while applying maritime law); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010,* MDL No. 2179, 2011 WL 4575696, at *10 (E.D. La. Sept. 30, 2011) (acknowledging the cause of action of negligence per se under maritime law).

[139]   *Brown v. Cox*, No. 2:11cv184, 2011 WL 3269680, at *3 (E.D. Va. July 27, 2011) (discussing whether federal maritime law recognizes an independent claim for negligence per se).

[140]   *See Just v. Chambers*, 312 U.S. 383, 388 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the

*Garcia v. Vitus Energy, LLC*                                                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                              Page 20
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 20 of 45

to negligence as a matter of law—that is, negligence per se—when the statute or regulation at issue defines a standard of conduct that a reasonable person is expected to follow under the circumstances presented."[141]  Thus, "[t]he negligence per se doctrine provides that a person who indisputably violates a statute must be found negligent."[142]  The statute at issue here, AS 28.35.030(a), provides:

> A person commits the crime of driving while under the influence of an alcoholic beverage, inhalant, or controlled substance if the person operates or drives a motor vehicle or operates an aircraft or a watercraft (1) while under the influence of an alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination; or (2) and if, as determined by a chemical test taken within four hours after the alleged operating or driving, there is 0.08 percent or more by weight of alcohol in the person's blood or 80 milligrams or more of alcohol per 100 milliliters of blood, or if there is 0.08 grams or more of alcohol per 210 liters of the person's breath.

The Alaska Supreme Court has held that the subsection (a)(1) offense (the "under the influence theory") depends on whether "the driver was impaired at the time of

---

characteristic features of the maritime law or inconsistent with federal legislation."); *see also Russo v. APL Marine Servs., Ltd.,* No. 2:14-cv-03184-ODW (JCGx), 2014 WL 3506009, at *4 (C.D. Cal. July 14, 2014) ("Thus, in cases in which the issues are not sufficiently addressed by maritime law, and where state law fills those gaps in a way that is not destructive to the uniformity that admiralty law endeavors to maintain, the relevant state law applies.")

[141] *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 647 (Alaska 2007) (citing *Bachner v. Rich*, 554 P.2d 430, 441–42 (Alaska 1976)).

[142] *Meyer v. ARG Enterprises, Inc.*, No. 3:05-cv-000239 TMB, 2007 WL 9718459, at *1 (D. Alaska Sept. 28, 2007) (applying Alaska law and quoting *Ardinger v. Hummell*, 982 P.2d 727, 733–34 (Alaska 1999)).

*Garcia v. Vitus Energy, LLC*                                                      Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                          Page 21
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 21 of 45

driving."[143] The under the influence theory requires "proof of a level of impairment that renders the driver incapable of operating a motor vehicle 'with the caution characteristic of a person of ordinary prudence who is not under the influence.'"[144] The subsection (a)(2) offense (the "blood-alcohol-level theory") depends "solely on whether 'the driver's chemical test result is 0.08 percent or higher within four hours of driving.'"[145]

It is not possible for Plaintiff to raise a material factual dispute about whether Mr. Dewitt violated AS 28.35.030(a)(2) because both parties agree that Mr. Dewitt was not chemically tested for alcohol intoxication during the night of October 19, 2018,[146] and a violation of AS 28.35.030(a)(2) cannot be established without a chemical test.[147] Plaintiff does not argue otherwise, instead asserting that Vitus's Motion for Partial Summary Judgment as to Plaintiff's claim of negligence per se may be mooted if the Court imposes a dispositive sanction pursuant to Plaintiff's Motion for Sanctions at Docket 38. On April 29, 2022, the Court denied Plaintiff's Motion for Sanctions at Docket 53. As such, Vitus's Motion on this claim remains ripe.

Regarding the subsection (a)(1) offense, Vitus argues that Plaintiff cannot produce admissible evidence that Mr. Dewitt was "under the influence" of alcohol within the meaning of AS 28.35.030(a)(1) when he grounded the skiff.[148] The undisputed

---

[143] *Barnebey v. Dep't of Admin., Div. of Motor Vehicles*, 473 P.3d 682, 689 (Alaska 2020), *reh'g denied* (May 18, 2020) (quoting *Valentine v. State*, 215 P.3d 319, 326 (Alaska 2009)).

[144] *Molina v. State*, 186 P.3d 28, 29 (Alaska Ct. App. 2008) (quoting *Gundersen v. Anchorage*, 762 P.2d 104, 114–15 n.7 (Alaska Ct. App. 1988)).

[145] *Barnebey,* 473 P.3d at 682 (quoting *Valentine*, 215 P.3d at 326).

[146] Docket 46 at 12; Docket 49-7 at 10.

[147] *See Barnebey,* 473 P.3d at 682.

[148] Docket 46 at 10–12.

evidence shows that Mr. Dewitt consumed one beer before he and Plaintiff left Dillingham for the JACKIE M to retrieve Mr. Dewitt's wallet.[149] Plaintiff states that it is "unknown the exact quantity of alcohol [Mr. Dewitt] consumed" on October 19, 2018, but does not allege that she observed him drinking any alcohol, beyond the single beer at the bar, prior to the grounding.[150] Plaintiff argues that circumstantial evidence may be considered on a motion for summary judgment, and a reasonable juror could infer from the circumstantial evidence in this case that Mr. Dewitt was under the influence of alcohol while operating the skiff.[151]

Plaintiff puts forth several facts that have no bearing on Mr. Dewitt's level of intoxication during the skiff ride, such as Mr. Dewitt's alcohol consumption a week before the grounding, the weather on the night of October 19, 2018, the fact that the skiff had no lighting or seating, the fact that Mr. Dewitt "freaked out" after the grounding and delayed contacting his crew, and Mr. Dewitt's alcohol consumption after the grounding.[152] These facts are not material to the issue of whether Mr. Dewitt was under the influence of alcohol while operating the skiff on the night of October 19, 2018, and thus cannot create a triable issue regarding Plaintiff's negligence per se claim.

The handful of facts that are relevant to Mr. Dewitt's level of intoxication on October 19, 2018, do not save Plaintiff's claim. Plaintiff alleges Mr. Dewitt had a half-

---

[149] Docket 49 at 11–12; Docket 49-6 at 6; Docket 49-7 at 5, 8.
[150] Docket 49 at 4; *see also* Docket 49-6; Docket 49-13.
[151] Docket 49 at 12.
[152] *Id.* at 12–13.

*Garcia v. Vitus Energy, LLC*                                                                Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                                    Page 23
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 23 of 45

empty bottle of liquor on his person after the grounding.[153]  Plaintiff attested that she smelled alcohol on Mr. Dewitt's breath prior to the grounding.[154]  A JACKIE M crew member stated he believed Mr. Dewitt and Plaintiff to be in "party mode" prior to the grounding; the same crew member testified later that he did not mean consuming alcohol.[155]  Finally, Vitus's CEO emailed its CSO after the grounding asking if Vitus needed to report to the Coast Guard if Mr. Dewitt was fired for drinking while operating the skiff.[156]

Taking these allegations as true and construing all inferences in Plaintiff's favor, Plaintiff has failed to raise a genuine issue of material fact as to whether Mr. Dewitt violated AS 28.35.030(a)(1).  A violation would require Plaintiff to offer proof of a *level of impairment* that rendered Mr. Dewitt incapable of operating the skiff with the caution of a reasonably prudent person not under the influence.[157]  Plaintiff smelling alcohol on Mr. Dewitt's breath does not allow a jury to permissibly infer the level of Mr. Dewitt's intoxication while operating the skiff.  Plaintiff does not offer evidence that Mr. Dewitt drank more than a single beer prior to the grounding.  As Vitus points out, Plaintiff also does not offer any evidence that anyone who interacted with Mr. Dewitt on the night of the

---

[153] Docket 49 at 12; Docket 49-6 at 8; Docket 49-13 at 5.
[154] Docket 49-13 at 4.
[155] Docket 49 at 5; Docket 49-5 at 4.
[156] Docket 49 at 7; Docket 49-17.
[157] *See Molina v. State*, 186 P.3d 28, 29 (Alaska Ct. App. 2008) (quoting *Gundersen v. Anchorage*, 762 P.2d 104, 114–15 n.7 (Alaska Ct. App. 1988)).

*Garcia v. Vitus Energy, LLC*                                                                 Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                Page 24

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 24 of 45

grounding believed he was under the influence.[158] Plaintiff herself testified that Mr. Dewitt did not seem intoxicated that evening.[159]

As no reasonable jury could conclude, based on Plaintiff's evidence, that Mr. Dewitt was "under the influence of alcohol" within the meaning of AS 28.35.030 on the night of October 19, 2018, Plaintiff has failed to raise a triable issue regarding an essential element of a negligence per se claim—the violation of a statute.[160] Summary judgment is therefore **GRANTED** as to Count I Negligence Per Se.

## 2. Negligent entrustment

"Maritime law recognizes the tort of negligent entrustment."[161] Federal maritime law applies the standard for negligent entrustment set forth in the RESTATEMENT (SECOND) OF TORTS § 390 (1965), which states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know, to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.[162]

---

[158] Docket 46 at 11; Docket 49-2 at 4.

[159] Docket 49-6 at 9; Docket 49-13 at 3.

[160] *Meyer v. ARG Enterprises, Inc.*, No. 3:05-cv-000239 TMB, 2007 WL 9718459, at *1 (D. Alaska Sept. 28, 2007) (applying Alaska law and quoting *Ardinger v. Hummell*, 982 P.2d 727, 733–34 (Alaska 1999)).

[161] *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 1001 (D. Ariz. 2006) (citing *Churchill v. F/V Fjord*, 892 F.2d 763, 771 (9th Cir. 1988), *cert. denied*, 497 U.S. 1025 (1990)).

[162] *Churchill*, 892 F.2d at 771. Both parties agree that the standard set forth in the RESTATEMENT (SECOND) OF TORTS § 390 (1965) governs Plaintiff's negligent entrustment claim. The application of maritime law and Alaska law thus leads to the same result with respect to this claim. *See Nelson v. Progressive Cas. Ins. Co.,* 162 P.3d 1228, 1232 (Alaska 2007) ("Alaska recognizes the common law tort of negligent entrustment and follows the definition in the RESTATEMENT (SECOND) OF TORTS § 390 (1965).").

*Garcia v. Vitus Energy, LLC*                                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                              Page 25
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 25 of 45

To prevail on a theory of negligent entrustment, Plaintiff must show that Vitus supplied the skiff to Mr. Dewitt, and Vitus must have known, or should have known, that Mr. Dewitt would be likely to use the skiff in a dangerous manner.[163] Vitus contends that this case is similar to *Churchill v. F/V Fjord*, in which the Ninth Circuit upheld the district court's grant of summary judgment on a negligent entrustment claim arising out of a collision of two skiffs.[164] In *Churchill*, the son of a shipowner, who was also a ship crewmember, used the ship's skiff without permission to go to a party and, while under the influence of alcohol and possibly marijuana, struck another skiff, injuring its passengers.[165] The Ninth Circuit found that (a) the evidence supported the conclusion that the shipowner did not "supply" the skiff to his son when the son did not have permission to use it; and (b) the shipowner had no reason to believe his son would operate the skiff without permission or in a harmful manner.[166] Here, the undisputed evidence indicates that Mr. Dewitt's use of the skiff on October 19, 2018, was contrary to Vitus policy prohibiting use of the skiff for personal reasons.[167] Vitus asserts that Mr. Dewitt was aware of this policy, and there is no evidence suggesting that Vitus should have known Mr. Dewitt would use the skiff against company policy or in an unsafe manner.[168] On the contrary, Vitus

---

[163] *Churchill*, 892 F.2d at 771.
[164] *Id.*
[165] *Id.* at 766.
[166] *Id.* at 771.
[167] Docket 47-7 at 3; Docket 49-19 at 1.
[168] Docket 46 at 16.

*Garcia v. Vitus Energy, LLC*                                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                          Page 26
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 26 of 45

presents evidence that Mr. Dewitt was a seasoned captain with years of training and experience operating watercraft, including skiffs, on Alaskan waterways.[169]

In opposition, Plaintiff asserts that Vitus "permitted the crew, including Mr. Dewitt, to frequently use the skiff to travel to and from Dillingham after dark[,]" and that there is "a genuine dispute of material fact regarding whether the crew's use of the skiff after dark was habitual."[170] Plaintiff cites the testimony of Deckhand Jonathan Russo, in which he indicated that he had used the skiff after dark, and the testimony of Engineer Scott Edwards, in which he testified it was "unusual" for a captain to drive a skiff in the dark on a waterway in western Alaska.[171] This testimony cannot save Plaintiff's claim from summary judgment. The JACKIE M crew's habitual use of the skiff at night is not a "material fact" as it has little bearing on whether Vitus entrusted the skiff to Mr. DeWitt knowing or having reason to know that he would use it "in a manner involving unreasonable risk of physical harm to himself and others."[172] Plaintiff does not assert that any operation of a skiff in the dark inherently involves a risk of harm to others. Further, it is uncontested that Mr. Dewitt's use of the skiff on the night of October 19, 2018 was unauthorized.[173] Without authorization, Vitus cannot be said to have supplied the skiff to Mr. Dewitt to use to transport Plaintiff from the JACKIE M to Dillingham.[174] Plaintiff also does not assert that Mr. Dewitt had a history of using the skiff for personal reasons,

---

[169] *Id.* at 13; Docket 47-2 at 4; Docket 49-2 at 5.
[170] Docket 49 at 18–19.
[171] *Id.* at 19; Docket 49-3 at 5; Docket 49-5 at 7.
[172] RESTATEMENT (SECOND) OF TORTS § 390 (1965).
[173] Docket 47-7 at 3; Docket 49-19.
[174] *See Churchill v. F/V Fjord*, 892 F.2d 763, 771 (9th Cir. 1988), *cert. denied*, 497 U.S. 1025 (1990).

*Garcia v. Vitus Energy, LLC*  Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment  Page 27
Case 3:20-cv-00249-JMK  Document 55  Filed 06/06/22  Page 27 of 45

operating the skiff while intoxicated, or operating the skiff carelessly. Plaintiff asserts that this Court should not apply *Churchill*, arguing it is distinguishable because this case involves a captain's, as opposed to a crewmember's, unauthorized use of a skiff.[175] Plaintiff does not elaborate on why this distinction is consequential or how it absolves her from offering evidence supporting a *prima facie* cause of action for negligent entrustment. Accordingly, construing all evidence in Plaintiff's favor, Plaintiff has failed to present evidence that would allow a reasonable jury to decide in her favor on her negligent entrustment claim. Summary judgment is **GRANTED** as to Count III Negligent Entrustment.

### 3. Negligent hiring, training, and supervision

Under federal maritime law, an employer may be held liable for negligent hiring if (a) its employee "was incompetent or unfit to perform the work for which it was hired"; (b) "the employer knew or reasonably should have known of the particular incompetence or unfitness"; and (c) "the incompetence or unfitness" proximately caused plaintiff's injury.[176] Vitus asserts that there is no evidence that Vitus was on notice that Mr. Dewitt would violate company policy by using the skiff in an unauthorized manner when it hired him.[177] In her opposition, Plaintiff fails to adduce any evidence supporting her negligent hiring claim, indicating instead that "[Plaintiff] is no longer pursuing her

---

[175] Docket 49 at 19.

[176] *See Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011) (applying federal maritime law); *Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1287 (S.D. Fla. 2019), *report and recommendation adopted*, No. 18-21364-Civ-Scola, 2019 WL 2254963 (S.D. Fla. May 8, 2019) (same).

[177] Docket 46 at 20.

*Garcia v. Vitus Energy, LLC*                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment          Page 28

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 28 of 45

claim for negligent hiring."[178]   While Plaintiff's "abandonment" of this claim is procedurally inelegant—Plaintiff did not move to amend her complaint under Federal Rule of Civil Procedure 15—the Court finds that summary judgment is a proper means of disposal of this claim.[179]  Vitus carried its burden to show there was no genuine dispute of material fact regarding Plaintiff's negligent hiring claim and Plaintiff did not show otherwise.  Summary judgment is therefore **GRANTED** as to Plaintiff's negligent hiring claim.

As for Plaintiff's negligent supervision and negligent training claims, both theories are recognized under federal maritime law.[180]  Under federal maritime law, negligent supervision "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment."[181]   Plaintiff "must allege that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment."[182]  Vitus asserts that there is no

---

[178] Docket 49 at 20 n.124.

[179] *Long v. Pend Oreille Cty. Sheriff's Dep't*, 269 F. App'x 749, 751 (9th Cir. 2008) ("Appellants abandoned their false arrest claim by failing to raise it in their opposition to summary judgment"); *see also Santos v. TWC Admin. LLC,* No. CV 13-04799 MMM (CWx), 2014 WL 12558274, at *9 (C.D. Cal. Nov. 3, 2014) ("The failure of a plaintiff to offer evidence or argument concerning a specific claim in opposition to a motion for summary judgment constitutes abandonment of the claim, and summary judgment is properly entered in the defendant's favor on the claim as a result.")

[180] *See Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV-LENARD, 2021 WL 2592914, at *9 (S.D. Fla. Apr. 23, 2021) (applying federal maritime law).

[181] *Id.; see also Anderson v. Ahluwalia*, No. 21-60793-CIV-SINGHAL, 2022 WL 850000, at *6 (S.D. Fla. Feb. 28, 2022) (same).

[182] *Reed,* 2021 WL 2592914, at *9 (applying federal maritime law).

*Garcia v. Vitus Energy, LLC*                                                      Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                    Page 29

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 29 of 45

evidence that Vitus was on notice of Mr. Dewitt's unfitness, let alone that it failed to investigate further.[183]  In opposition, Plaintiff conflates negligent training and negligent supervision, and does not discuss negligent supervision individually.[184] As Plaintiff offers no evidence of facts specific to negligent supervision showing the existence of a genuine issue for trial,[185] summary judgment is **GRANTED** on Plaintiff's negligent supervision claim.

Negligent training occurs when an employer "was negligent in the implementation or operation of [a] training program" and the negligence causes plaintiff's injury.[186]  Plaintiff argues that Vitus negligently failed to train its crewmembers on appropriate reporting of noncompliance with company policy and, as a result, no JACKIE M crewmembers reported Mr. Dewitt's personal use of the skiff prior to the grounding.[187] Vitus argues that Plaintiff cannot raise a genuine dispute of material fact as to the causal relationship between Vitus's purported negligent training and Plaintiff's injuries.[188]

To support her position, Plaintiff points to a portion of Deckhand Russo's testimony indicating that he did not recall receiving training on Vitus's policy prohibiting

---

[183] Docket 46 at 20–21.
[184] *See* Docket 49 at 19–24.
[185] *See Quashen v. Carnival Corp.*, No. 1:20-cv-22299-KMM, 2021 WL 5978472, at *24 (S.D. Fla. Dec. 17, 2021) (applying maritime law and granting summary judgment where "Plaintiff has attempted to 'wrap up' her negligent supervision and training claims with her negligent maintenance claim.")
[186] *Reed,* 2021 WL 2592914, at *9 (applying federal maritime law); *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021) (applying federal maritime law).
[187] Docket 49 at 23–24.
[188] Docket 50 at 10–12.

*Garcia v. Vitus Energy, LLC*                                                Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                    Page 30
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 30 of 45

use of the skiff for personal reasons.[189]  Plaintiff also asserts that First Mate Hoyt Ogle and

Engineer Edwards received no training whatsoever from Vitus in 2018.[190]  From these

facts, Plaintiff asserts that "Defendant had a duty to train its crew to report noncompliance

of company policy" and, had the crew been trained, they would have reported Mr. Dewitt's

conduct to Vitus before he left the JACKIE M for Dillingham with Plaintiff.[191]  In this

scenario, Plaintiff argues, Vitus could have tested Mr. Dewitt's saliva for alcohol and

"could have deemed Capt. DeWitt incapacitated and transferred authority to take command

of the JACKIE M to First Mate Ogle."[192]  Vitus argues that this line of argument invites

the Court to speculate what might have happened if a noncompliance report was sent to

Vitus in the few moments that Mr. Dewitt and Plaintiff were aboard the JACKIE M before

they left for Dillingham.[193]  The Court agrees.

Plaintiff does not argue that, under Vitus's policies, the JACKIE M crew

members were supposed to prevent others from violating company policy.[194]  Taking as

true that Vitus failed to train its crew about submitting noncompliance reports, or who

should receive these reports, Plaintiff does not adduce any evidence indicating that the

timely submission of a noncompliance report would have changed the resulting sequence

of events.  While Plaintiff, as the nonmoving party, is entitled to have all justifiable

---

[189] Docket 49 at 22; Docket 49-3 at 6–7.
[190] Docket 49 at 22.
[191] *Id.* at 23.
[192] *Id.*
[193] Docket 50 at 12.
[194] *See Quashen v. Carnival Corp.*, No. 1:20-cv-22299-KMM, 2021 WL 5978472, at *24 (S.D. Fla. Dec. 17, 2021) (applying maritime law and noting that principles of general maritime law "counsel[] strongly against finding evidence to support negligent training based on procedures that do not exist.").

*Garcia v. Vitus Energy, LLC*                                                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                        Page 31
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 31 of 45

inferences drawn in her favor, "such 'inferences are limited to those upon which a reasonable jury might return a verdict.'"[195]   Beyond describing a chain of purely hypothetical events, Plaintiff has failed to raise an issue of fact such that a jury could conclude that Vitus's negligent failure to implement training caused Plaintiff's injuries.

Further, evidence suggesting that employees besides Mr. Dewitt were not aware of Vitus's policy prohibiting personal use of the skiff is inconsequential.   The evidence shows Mr. Dewitt was aware that having a passenger in the skiff for personal reasons was against Vitus policy and chose to act contrary to policy on the night of October 18, 2019.[196]   The evidence thus supports the contention that an individual employee's decision not to follow company policy, rather than negligent training, was the cause of Plaintiff's injuries.

Finally, Plaintiff's assertions that Mr. Dewitt's use of the skiff after dark supports her negligent training claim is unavailing.   Vitus did not have a policy prohibiting use of the skiff after dark or offer training to that effect.   Failure to have or implement certain risk management procedures and safety standards is not a recognized breach of a duty under federal maritime law.[197]   Because Plaintiff has failed to carry her burden to raise a genuine dispute as to an essential element of her negligent training claim—causation— summary judgment is **GRANTED** as to Plaintiff's claim for negligent training.

---

[195] *Miller v. Baxter Healthcare Corp.*, 165 F. App'x 550, 551 (9th Cir. 2006) (quoting *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995)).
[196] Docket 47-2 at 11–12, 15; Docket 49-7 at 7.
[197] *Quashen*, 2021 WL 5978472, at *23 (citing *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1311–12 (S.D. Fla. 2021)).

*Garcia v. Vitus Energy, LLC*                                                                   Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                        Page 32
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 32 of 45

### 4. Vicarious liability

In Count V of the Complaint, Plaintiff alleges that Vitus is vicariously liable for Mr. Dewitt's negligence.[198] Federal maritime law "embraces the principles of the law of agency."[199] Both Vitus and Plaintiff cite the RESTATEMENT (SECOND) OF AGENCY when discussing Plaintiff's vicarious liability claim.[200] The RESTATEMENT (SECOND) OF AGENCY was superseded by the RESTATEMENT (THIRD) OF AGENCY in 2006.[201] The Court therefore will apply agency law as articulated in the RESTATEMENT (THIRD) OF AGENCY in assessing Plaintiff's vicarious liability claim.[202]

As a preliminary matter, Plaintiff's cause of action for vicarious liability in her Complaint states "Defendant Vitus's vicarious liability stems from theories of respondeat superior, aided-in-agency and non-delegable duty."[203] Plaintiff's vicarious liability theories are something of a moving target and appear to have shifted as this matter progressed. In opposing Vitus's Motion for Partial Summary Judgment, Plaintiff maintains that Vitus is liable under a theory of respondeat superior.[204] However, in her opposition, Plaintiff appears to have abandoned her non-delegable duty and aided-in-agency theories

---

[198] Docket 1 at 6.
[199] *W. Challenger, LLC v. DNV GL Grp.*, No. C16-0915-JCC, 2017 WL 6611701, at *3 (W.D. Wash. Dec. 27, 2017) (quoting *Stevens Tech. Servs., Inc. v. S.S. Brooklyn*, 885 F.2d 584, 589 (9th Cir. 1989), *aff'd sub nom. W. Challenger, LLC v. Seymour*, 765 F. App'x 369 (9th Cir. 2019).
[200] *See* Docket 46 at 21–22; Docket 49 at 24–32; Docket 50 at 14–20.
[201] *Schmidt v. Burlington N. & Santa Fe Ry. Co.*, 605 F.3d 686, 690 n.3 (9th Cir. 2010).
[202] *See Espinoza v. Princess Cruise Lines, Ltd.*, No. 2:17-cv-08412-FLA-JEM(x), 2022 WL 422782, at *14–15 (C.D. Cal. Jan. 25, 2022) (citing the RESTATEMENT (THIRD) OF AGENCY in maritime case); *W. Challenger*, 2017 WL 6611701, at *3 (same); *Perry v. HAL Antillen NV*, No. C12-0850JLR, 2013 WL 2099499, at *30 n.28 (W.D. Wash. May 14, 2013) (same).
[203] Docket 1 at 6.
[204] Docket 49 at 24–25.

*Garcia v. Vitus Energy, LLC*  Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment  Page 33

Case 3:20-cv-00249-JMK  Document 55  Filed 06/06/22  Page 33 of 45

in favor of arguing that Vitus itself was negligent or reckless or that Captain Dewitt was acting with apparent authority.[205]  The Court notes that neither theory is specifically pled in Plaintiff's Complaint.[206]  While aided-in-agency and apparent authority are similar claims, the allegation that Vitus itself was negligent or reckless is an entirely new theory of relief.  In her Complaint, Plaintiff does not allege a direct claim for general negligence against Vitus or otherwise preview a theory that Vitus's own negligence caused Plaintiff's injuries.[207]  Nevertheless, because the Court favors deciding cases on their merits, and because Vitus has had the opportunity to respond to Plaintiff's new arguments, the Court will address Plaintiff's new theories of liability.[208]  The Court is, however, constrained to note that "summary judgment is not a procedural second chance to flesh out inadequate pleadings."[209]

### (a)     Respondeat superior

"General maritime law recognizes typical respondeat superior principles," under which a principal may be held vicariously liable for the torts of its agent acting within the scope of employment.[210]  The RESTATEMENT (THIRD) OF AGENCY § 7.07 defines the scope of employment as follows:

---

[205]  *See id.* at 26–32.
[206]  *See* Docket 1.
[207]  *See id.*
[208]  *See Bargen v. Dep't of Def.,* 623 F. Supp. 290, 293 (D. Nev. 1985).
[209]  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)); *see also Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014).
[210]  *Espinoza v. Princess Cruise Lines, Ltd.*, No. 2:17-cv-08412-FLA-JEM(x), 2022 WL 422782, at *14 (C.D. Cal. Jan. 25, 2022); *see Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d

*Garcia v. Vitus Energy, LLC*
Order Granting in Part Defendant's Motion for Partial Summary Judgment
Case No. 3:20-cv-00249-JMK
Page 34

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 34 of 45

[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.[211]

Vitus asserts that there is there is no evidence that Mr. Dewitt intended to serve any purpose of Vitus when he used the skiff to transport Plaintiff on October 19, 2018.[212] Vitus cites portions of Mr. Dewitt's testimony to demonstrate that Mr. Dewitt used the skiff for "personal reasons," not for Vitus's benefit.[213] Moreover, it is uncontested that Mr. Dewitt's actions violated Vitus's policy against personal use of the skiff.[214]

The sole piece of evidence Plaintiff relies on to create an issue of material fact regarding the scope of employment is Captain James T. Cushman's expert report, in which he stated that the idea that:

Captain Dewitt was not 'on duty' when he decided to take the skiff on his personal junket . . . [t]hereby somehow not responsible for his actions as a VITUS ENERGY, LLC employee . . . is a completely alien thought to anything I've encountered in any of my 5 commands while in the Coast Guard, as well as countless jobs as Captain/Master of vessels within the civilian community!! The Captain, while his/her license is 'on the board' is inescapably responsible and accountable 24/7 – whether ashore or afloat. While the Captain may 'clock on and off' for reasons of pay, he/she is still responsible and accountable for the vessel and all aboard – as well as the vessel and crew adherence to all applicable rules, laws, company policies, protocols, etc. '*On the sea there is law*

1225, 1234 (11th Cir. 2014); *Stoot v. D & D Catering Serv., Inc.*, 807 F.2d 1197, 1198–99 (5th Cir. 1987); *see also* RESTATEMENT (THIRD) OF AGENCY § 2.04 (2006).

[211] RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006).
[212] Docket 46 at 22.
[213] *Id.*; Docket 47-2 at 11.
[214] Docket 49 at 23; Docket 49-7 at 7.

*Garcia v. Vitus Energy, LLC*
Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment
Page 35
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 35 of 45

> older than the country, and wiser in it's worth – with
> responsibility goes authority, and with them both goes
> accountability.'[215]

Based on this opinion, Plaintiff concludes that Mr. Dewitt was "still on duty, [so] his use
of the skiff was within the scope of his employment."[216]

Captain Cushman appears to be opining on whether Mr. Dewitt is personally
responsible, as Captain of the JACKIE M, for his actions.[217]  Mr. Dewitt is not a party to
this action.  The question of his personal liability for his actions therefore is not pertinent
to this case and does not create a triable issue.  Plaintiff asserts that Captain Cushman's
opinion that Mr. Dewitt was "on duty" on the night of the grounding means that his use of
the skiff was within the scope of his employment.[218]  Plaintiff's argument ignores the
applicable legal test for the scope of an agent's employment under the general agency
principles incorporated in maritime law.  The means for ascertaining whether an employee
is "on duty" or "off duty" are not the same as the standard for determining whether an
employee's actions are within the scope of her employment.[219]  There is no principle of
agency law excepting captains of vessels from the scope of employment inquiry.  Offering

---

[215] Docket 49-15 at 10 (emphasis in the original).
[216] Docket 49 at 26.
[217] As Vitus noted in its reply brief, Captain Cushman testified that he was not offering an
opinion on vicarious liability.  *See* Docket 50 at 13 (citing Docket 40-6 at 63–64).
[218] Docket 49 at 26.
[219] Courts applying the RESTATEMENT approach have considered whether an employee is
"on duty" at all times in the scope of employment inquiry but have not found this issue dispositive
in the analysis.  *See Kashin v. Kent*, 457 F.3d 1033, 1041 (9th Cir. 2006) (finding foreign service
officer was within scope of duty not solely because the Department of State considered him "on
duty 24/7, but because he was "(1) engaged in a business act; (2) under the control of the
Department of State; (3) acting in furtherance of the Department of State's interest;" and (4) he
"subjectively believed he was acting within the scope of employment.").

*Garcia v. Vitus Energy, LLC*                                                      Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                              Page 36
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 36 of 45

an expert opinion that Mr. Dewitt was perpetually "on duty" does not raise a factual dispute such that a reasonable jury, applying general agency principles, could conclude that Mr. Dewitt was acting within the scope of his employment when he violated company policy for personal reasons.[220] Because Plaintiff does not offer specific facts suggesting that Mr. Dewitt was performing work assigned by Vitus or was engaging in conduct over which Vitus had control, the Court concludes Mr. Dewitt was not acting within the scope of his employment as a matter of law.[221] Summary Judgment is therefore **GRANTED** as to Plaintiff's theory of liability based on respondeat superior.

### (b) Vicarious liability outside the scope of employment

In opposing summary judgment, Plaintiff argues that, even if the Court finds Mr. Dewitt was not acting within the scope of his employment, Vitus may be vicariously liable because "[i]n limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment."[222] Plaintiff cites (1) the RESTATEMENT (SECOND) OF AGENCY § 219(2)(b), which provides that a principal can be subject to liability for the actions of an agent when "the master was negligent or reckless," and (2) § 219(2)(d), which imposes vicarious liability when "the servant

---

[220] *See In re Complaint of McLinn,* 744 F.2d 677, 683–84 (9th Cir. 1984) (citing the RESTATEMENT (SECOND) OF AGENCY and affirming district court's finding that fishermen was not acting withing the scope of his employment as a matter of law because "he was using the skiff for his own, not his master's, business."); *see also Favorito v. Pannell*, 27 F.3d 716, 722 (1st Cir. 1994) (citing the RESTATEMENT (SECOND) OF AGENCY and holding that yacht owner could not be liable under respondeat superior when engineer "was on a frolic and banter of his own, actuated by no employer mission whatever and in direct violation of Captain Percy's explicit instructions not to use the tender and not to bring guests aboard the [yacht].").

[221] RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006).

[222] Docket 49 at 26.

*Garcia v. Vitus Energy, LLC*  Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment  Page 37

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 37 of 45

purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."[223]

### (c) Negligence and recklessness

The RESTATEMENT (SECOND) OF AGENCY § 219(2)(b) provides that an employer is subject to liability for the torts of its employees if the employer itself was negligent or reckless, even if the employee is acting outside the scope of his or her employment.[224] The corresponding section in the RESTATEMENT (THIRD) OF AGENCY states that "[a] principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent."[225] Plaintiff argues that a reasonable juror could find that Vitus was reckless "when it had no policy which prohibited use of the skiff after dark, failed to train its crewmembers that it was unsafe to use the skiff after dark, failed to provide seating for the skiff, and/or failed to provide lighting for the skiff for after dark use."[226]

Under the RESTATEMENT (THIRD) OF AGENCY, Plaintiff's arguments are largely duplicative of those she advanced in support of her negligent hiring, training, and supervision claim, and they suffer from the same defects. "Liability under [RESTATEMENT (THIRD) OF AGENCY § 7.05(1)] . . . requires some nexus or causal connection between the

---

[223] *Id.* (citing RESTATEMENT (SECOND) OF AGENCY § 219(2) (1958)).
[224] Docket 49 at 26–27 (citing RESTATEMENT (SECOND) OF AGENCY § 219(2) (1958)).
[225] RESTATEMENT (THIRD) OF AGENCY § 7.05(1) (2006).
[226] Docket 49 at 28.

*Garcia v. Vitus Energy, LLC*                                          Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                Page 38

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 38 of 45

principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party."[227]  Plaintiff's allegations have little to do with Vitus's selection or control of Mr. Dewitt.

Even under the RESTATEMENT (SECOND) OF AGENCY, Plaintiff's evidence is insufficient to survive summary judgment.  To hold Vitus liable for Mr. Dewitt's actions outside the scope of employment, Plaintiff would have to offer evidence supporting all elements of a cause of action for negligence.[228]  Plaintiff alludes to Vitus's failure to have a policy prohibiting use of the skiff after dark and its failure to equip the skiff with seating or lighting at various points in her opposition, but fails to offer evidence that Vitus had a duty to do so or that Vitus's failure to do so caused her injuries.  The Court notes that Plaintiff's arguments appear as an attempt to shoehorn Plaintiff's cause of action for vicarious liability into a claim for direct negligence against Vitus, when the Complaint contains no such claim and when Plaintiff has failed to offer evidence that Plaintiff's injuries were proximately caused by a breach of a duty Vitus owed to her.[229]  Vitus's Motion for Summary Judgment based on liability for Vitus's own negligence under RESTATEMENT (THIRD) OF AGENCY § 7.05(1) therefore is **GRANTED**.

### (d) Apparent authority

The RESTATEMENT (THIRD) OF AGENCY defines apparent authority as "the power held by an agent or other actor to affect a principal's legal relations with third parties

---

[227] RESTATEMENT (THIRD) OF AGENCY § 7.05(1) cmt. c (2006).
[228] RESTATEMENT (SECOND) OF AGENCY §§ 213 cmt. a, 219(2)(b) (1958).
[229] *See Quashen v. Carnival Corp.*, No. 1:20-cv-22299-KMM, 2021 WL 5978472, at *18 (S.D. Fla. Dec. 17, 2021).

*Garcia v. Vitus Energy, LLC*                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment          Page 39

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 39 of 45

when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."[230] A principal may "make a manifestation by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation."[231] Third parties who interact with the agent occupying a certain position will "naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so."[232] The issue of apparent authority is "generally one of fact for the jury."[233]

Plaintiff asserts that Vitus endowed Mr. Dewitt with apparent authority by hiring him as the captain of the JACKIE M.[234] Plaintiff submitted an affidavit with her opposition in which she states that "the company had hired [Mr. Dewitt] to be their tugboat captain. Because of all this, I relied on Kevin's skill and experience to keep me safe in the skiff."[235] Plaintiff also asserts that she believed in Mr. Dewitt's "company authority" to use the skiff because she observed that Mr. Dewitt had authority over the crew and "they deferred to him as their captain."[236] Finally, Plaintiff argues that the crewmembers' failure to question Mr. Dewitt's use of the skiff on October 19, 2018, was a "ratification" of his authority through silence.[237]

---

[230] RESTATEMENT (THIRD) OF AGENCY § 2.03 (2006).
[231] RESTATEMENT (THIRD) OF AGENCY § 3.03, cmt. b (2006).
[232] Id.
[233] Perry v. HAL Antillen NV, No. C12-0850JLR, 2013 WL 2099499, at *30 n.28 (W.D. Wash. May 14, 2013) (citing NLRB v. Donkin's Inn, Inc., 532 F.2d 138, 140 (9th Cir. 1976)).
[234] Docket 49 at 30; Docket 49-1.
[235] Docket 49-13 at 3; see also Docket 49 at 31.
[236] Docket 49-13 at 1–3.
[237] Docket 49 at 31.

Plaintiff has raised a triable issue regarding the apparent authority inherent in the position of ship captain. Vitus gave Mr. Dewitt the title of captain and Plaintiff offers evidence that she relied on this title to assume that Mr. Dewitt had authority to use the skiff on the night of October 19, 2018. The Court cannot determine, as a matter of law, that Plaintiff's belief that Mr. Dewitt, as captain of the JACKIE M, had broad authority to use the skiff for personal reasons was unreasonable. Vitus, citing the RESTATEMENT (SECOND) OF AGENCY, contends that Plaintiff cannot establish an apparent agency theory as a matter of law because "[n]o reasonable juror could view the evidence and determine that when [Mr.] Dewitt met [Plaintiff] at the bar on October 19 for a date, he did so *for* Vitus and with Vitus' consent."[238] However, this argument ignores the fact that apparent authority can stem from an employee's position within an organization and the authority reasonably associated with that position.[239] The reasonableness of Plaintiff's assumption that, by nature of his title as the captain of the JACKIE M, Mr. Dewitt had Vitus's consent to utilize company instrumentalities—even for non-business purposes—is a factual matter that the jury ultimately must determine.[240]

The apparent authority inquiry is circumscribed by the requirement that a third party's reasonable belief that an agent has authority to act on the principal's behalf

---

[238] Docket 50 at 19 (emphasis in the original).
[239] RESTATEMENT (THIRD) OF AGENCY § 3.03, cmt. b (2006).
[240] *See Espinoza v. Princess Cruise Lines, Ltd.*, No. 2:17-cv-08412-FLA JEM(x), 2022 WL 422782, at *16 (C.D. Cal. Jan. 25, 2022) (holding apparent authority was a question for the jury).

*Garcia v. Vitus Energy, LLC*                                    Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                Page 41

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 41 of 45

must be traceable to the principal itself.[241]  Plaintiff presents no authority to support the proposition that an employee's subordinates within an organization may clothe that employee with apparent authority.  Therefore, the actions and inactions of the JACKIE M crewmembers, without evidence that Vitus directed their conduct, are not manifestations that are traceable to Vitus itself.[242]

Plaintiff's arguments regarding the crewmembers' "ratification" of Mr. Dewitt's actions also fail to support her theory of apparent authority.  While Plaintiff is correct that a principal may ratify an act by failing to object to it, Plaintiff cites no support for the position that agents can ratify an act on behalf of their principal.[243]  The evidence shows that Vitus fired Mr. Dewitt after the grounding for "[o]perating the skiff for personal use, bringing an unauthorized person on-board the vessel and putting an unauthorized person in the skiff."[244]  Plaintiff offers no evidence indicating that Vitus executives knew of Mr. Dewitt's actions and failed to object or assented to those actions after the fact.[245] Summary judgment is therefore **DENIED IN PART** as to Plaintiff's theory of apparent

---

[241] RESTATEMENT (THIRD) OF AGENCY § 2.03, cmt. c (2006) ("A belief that results solely from the statements or other conduct of the agent, unsupported by any manifestations traceable to the principal, does not create apparent authority . . . .").

[242] RESTATEMENT (THIRD) OF AGENCY § 3.03, cmt. c (2006) ("More commonly, and less formally, superior agents authorize subordinate coagents . . . A superior agent's authority to authorize may itself have been conferred by the organization's governing body or by a higher superior agent."); *see also Pierson v. United States,* 527 F.2d 459, 463 (9th Cir. 1975) (finding that apparent authority was a factual question when employee's superior within an organization knew of employee's conduct and did not prohibit it).

[243] RESTATEMENT (THIRD) OF AGENCY § 4.01, cmt. b (2006) ("The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal.")

[244] Docket 46 at 17; Docket 47-6 at 6.

[245] RESTATEMENT (THIRD) OF AGENCY § 4.01, cmt. b (2006) ("The principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.")

*Garcia v. Vitus Energy, LLC*                                          Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                        Page 42
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 42 of 45

agency. Vitus is entitled to summary judgment on Plaintiff's theory that Mr. Dewitt's apparent authority stemmed from the representations or silence of the JACKIE M crewmembers. Summary judgment is denied as to Plaintiff's theory that Vitus can be liable for Mr. Dewitt's negligence under a theory of apparent authority due to his position as captain of the JACKIE M.

### 5.    Punitive damages

Plaintiff asserts she is entitled to punitive damages based on (a) Vitus's own conduct and (b) the conduct of Mr. Dewitt.[246] For Plaintiff's claim based on Vitus's own negligence, the general maritime law provides that punitive damages may be imposed for direct "conduct which manifests 'reckless or callous disregard' for the rights of others or for conduct which shows 'gross negligence or actual malice or criminal indifference.'"[247] Here, Plaintiff brings forth no additional evidence indicating there is triable issue as to whether Vitus is liable for punitive damages based on its own conduct. Plaintiff merely rehashes her previously advanced arguments regarding Vitus's liability for negligence and posits that these facts can support a jury issue as to whether Vitus acted willfully, recklessly, maliciously, or with gross negligence.[248] As described *supra*, Plaintiff has failed to bring forth evidence sufficient to create a triable issue as to Vitus's direct negligence—the same evidence thus fails to support her claim for punitive damages.

---

[246] Docket 49 at 32–34.

[247] *Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir. 1988) (quoting *Protectus Alpha Nav. Co. v. N. Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985)).

[248] Docket 49 at 33–34.

*Garcia v. Vitus Energy, LLC*                                                   Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment                        Page 43

Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 43 of 45

Construing all inferences in Plaintiff's favor, a reasonable jury could not conclude that Plaintiff was entitled to punitive damages for Vitus's conduct.[249]

Regarding Plaintiff's claim for punitive damages based on the conduct of Mr. Dewitt, courts are divided over the standard by which a shipowner can be held vicariously liable in punitive damages for the conduct of its agent under maritime law.[250] The Ninth Circuit has adopted the approach articulated in the RESTATEMENT (SECOND) OF TORTS § 909, which states:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal or a managerial agent authorized the doing and the manner of the act, or (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act.[251]

This standard requires the Court to retread familiar territory. Plaintiff has not offered evidence that Vitus authorized Mr. Dewitt's excursion with Plaintiff. To the contrary, as previously stated, the evidence establishes that Vitus had a company policy prohibiting the personal use of the skiff.[252] Plaintiff also does not present evidence that Mr. Dewitt was unfit and that Vitus was reckless in employing him.[253] Mr. Dewitt, as the

---

[249] *Churchill*, 892 F.2d at 772 (affirming district court's finding that, notwithstanding defendant's intoxication while operating a watercraft, "he did not act with a 'reckless or callous disregard for the rights of others' or with 'gross negligence or actual malice or criminal indifference.'")

[250] *See Exxon Shipping Co. v. Baker,* 554 U.S. 471, 484 (2008) (refusing to resolve circuit split and leaving the Ninth Circuit's RESTATEMENT approach undisturbed).

[251] *Id.*; RESTATEMENT (SECOND) OF TORTS § 909 (1979).

[252] Docket 49-19.

[253] *See* Docket 49 at 32–34.

Captain of the JACKIE M, was indisputably "employed in a managerial capacity,"[254] but, as described *supra*, he was not acting in the scope of that employment when he transported Ms. Garcia in the skiff for purely personal reasons. Finally, Plaintiff offers no evidence that Vitus ratified or approved Mr. Dewitt's conduct—the unauthorized actions of subordinate employees cannot amount to ratification by the principal.[255] As such, punitive damages are unavailable to Plaintiff. Summary judgment therefore is **GRANTED** as to Count VI Punitive Damages.

## IV.   CONCLUSION

For the foregoing reasons, Vitus's Motion for Partial Summary Judgment and Partial Judgment on the Pleadings is **GRANTED IN PART**. Plaintiff is left with a path to recovery, albeit a narrow one. Under the terms of this Order, Plaintiff has one remaining viable theory of liability: that Vitus is vicariously liable for Mr. Dewitt's negligence, as pled in Count II of the Complaint, under a theory of apparent authority by nature of his position as captain of the JACKIE M.

IT IS SO ORDERED this 6th day of June, 2022, at Anchorage, Alaska.

            */s/ Joshua M. Kindred*
            JOSHUA M. KINDRED
            United States District Judge

---

[254] *In re Exxon Valdez*, No. A89-0095-CV (HRH), 1995 WL 527990, at *4 (D. Alaska Jan. 27, 1995) ("In the case at bar, it cannot be disputed seriously that the captain of a supertanker acts in a managerial capacity").

[255] *See* RESTATEMENT (THIRD) OF AGENCY § 4.01, cmt. b (2006).

*Garcia v. Vitus Energy, LLC*                                          Case No. 3:20-cv-00249-JMK
Order Granting in Part Defendant's Motion for Partial Summary Judgment          Page 45
Case 3:20-cv-00249-JMK   Document 55   Filed 06/06/22   Page 45 of 45